

UNITED  STATES  DISTRICT  COURT

FOR  THE  CENTRAL  DISTRICT  OF  CALIFORNIA

UNIVERSAL ELECTRONICS, INC.,  )
                            )
          Plaintiff,     )
                            )
v.                          )
                            )
                            )
UNIVERSAL REMOTE CONTROL,  )
INC.                         )
                          )
          Defendant.   )
_____ )

CASE NO. SACV 12-00329 AG (JPRx)


ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF UNIVERSAL ELECTRONICS, INC.'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Universal Electronics, Inc. ("Plaintiff") moves for summary judgment on Defendant Universal Remote Control, Inc.'s ("Defendant") Eighth Affirmative Defense of License, Ninth Counterclaim of Breach of Contract, and Tenth Affirmative Defense of Patent Misuse ("Motion"). Defendant opposes the Motion. The Motion is GRANTED IN PART and DENIED IN PART.

**BACKGROUND**

Plaintiff and Defendant are competitors in the universal remote control business. On March 2, 2012, Plaintiff filed this suit, alleging infringement of U.S. Patents Nos. 5,414,426 ("'426 Patent"), 5,614,906 ("'906 Patent"), 6,587,067 ("'067 Patent"), and 5,568,367 ("'367 Patent"). Both the '426 Patent and the '067 Patent have expired. On February 1, 2013, the Court issued its Claim Construction Order, which invalidated the only relevant claim in the '367 Patent. On May 2, 2013, the Court denied Defendant's motion to stay the case pending *inter partes* review. On May 14, 2013, the Court denied Plaintiff's Motion for Reconsideration of Claim Construction. Trial is set for May 6, 2014. In conjunction with this Order, the Court is also issuing an Order Granting in Part and Denying in Part Defendant's Motion for Summary Judgment ("Companion Order").

**LEGAL STANDARD**

Summary judgment is appropriate where the record, read in the light most favorable to the non-moving party, indicates that "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56 (c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Material facts are those necessary to the proof or defense of a claim, as determined by reference to substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In deciding a motion for

1   summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable

2   inferences are to be drawn in his favor." *Id.* at 269.

3          The burden initially is on the moving party to demonstrate an absence of a genuine issue

4   of material fact or to demonstrate that the nonmoving party will be unable to make a sufficient

5   showing on an essential element of its case for which it has the burden of proof. *Celotex*, 477

6   U.S. at 323. Only if the moving party meets its burden must the non-moving party produce

7   evidence to rebut the moving party's claim and create a genuine issue of material fact. *Id.* at

8   322-23. If the non-moving party meets this burden, then the motion will be denied. *Nissan Fire*

9   *& Marine Ins. Co. v. Fritz Co., Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000).

10

11  **<u>ANALYSIS</u>**

12

13  **1.      THE LICENSE DEFENSE AND BREACH OF CONTRACT COUNTERCLAIM**

14

15         The issue of whether Defendant has a license to the '426 Patent is discussed extensively

16  in Section 1.3 of the Companion Order. Of course, denial of summary judgment in no sense

17  mandates the grant of summary judgment for the non-moving party. But as discussed in the

18  Companion Order, Plaintiff has demonstrated the absence of a genuine issue of material fact on

19  the question of whether Plaintiff granted Defendant an implied license to the '426 Patent. The

20  associated counterclaim for breach of contract arising out of the alleged license therefore fails as

21  well. It is unnecessary to address Plaintiff's argument that in the absence of a fee provision,

22  Defendant's attorney fees and expenses are not an available remedy for the alleged breach.

23  (Mot. 16-17.)

24         The Court therefore GRANTS Plaintiff's motion as to Defendant's Eighth Affirmative

25  Defense of License and the accompanying Ninth Counterclaim for breach of the nonexistent

26  license.

27

28

**2.      PATENT MISUSE**

**2.1      Legal Standard**

The "basic rule of patent misuse" "[is] that the patentee may exploit his patent but may not 'use it to acquire a monopoly not embraced in the patent.'" *Princo Corp. v. Int'l Trade Comm'n*, 616 F.2d 1318, 1327 (Fed. Cir. 2010) (quoting *Transparent–Wrap Mach. Corp. v. Stokes & Smith Co.*, 329 U.S. 637, 643 (1947)).  The most common form of patent misuse is "requiring the purchase of an unpatented product as a condition for obtaining a license to the patent." *Princo*, 616 F.3d at 1327.  More generally, patent misuse occurs when "the patentee has impermissibly broadened the 'physical or temporal scope' of the patent grant with anticompetitive effect." *Windsurfing Int'l Inc. v. AMF, Inc.*, 782 F.2d 995, 1001 (Fed. Cir. 1986).  This reflects a policy "to prevent a patentee from using the patent to obtain market benefit beyond that which inheres in the statutory patent right." *Mallinckrodt, Inc. v. Medipart, Inc.*, 976 F.2d 700, 704 (Fed. Cir. 1992).

"[T]he enforcement of a patent procured by fraud on the Patent Office may be violative of § 2 of the Sherman Act provided the other elements necessary to a § 2 case are present." *Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 174 (1965).  Further, irrespective of fraud, "infringement actions initiated and conducted in bad faith contribute nothing to the furtherance of the policies of either the patent law or the antitrust law," and "such actions may constitute an attempt to monopolize violative of Section 2 of the antitrust law." *Handgards, Inc. v. Ethicon, Inc.*, 601 F.2d 986, 993 (9th Cir. 1979) ("*Handgards I*").

But "[p]atentees must be permitted to test the validity of their patents in court through actions against alleged infringers" without every unsuccessful case yielding an antitrust claim. *Id*.  And it is not even the case that a "patentee found guilty of prosecuting an infringement action in bad faith [would] necessarily be guilty of an offense of monopolization." *Id.* at 993 n.12.  While the costs of defense of a bad faith suit are part of the antitrust injury, an "antitrust

plaintiff pursuing a bad faith patent prosecution theory must still prove the other requisites of a § 2 offense." *Id*. at 993, 997.

> To establish monopolization or attempt to monopolize a part of trade or commerce under § 2 of the Sherman Act (on a Walker Process theory), it would . . . be necessary to appraise the exclusionary power of the illegal patent claim in terms of the relevant market for the product involved. Without a definition of that market there is no way to measure . . . (defendant's) ability to lessen or destroy competition. It may be that the (patented) device . . . does not comprise a relevant market. There may be effective substitutes for the device which do not infringe the patent.

*Id*. at 993 n.13 (quoting *Walker Process*, 382 U.S. at 177-78).  These requirements also apply to an antitrust claim brought on a *Handgards* bad-faith assertion theory.  *See Handgards, Inc. v. Ethicon, Inc.*, 743 F.2d 1282, 1293-97, 1288-89 (9th Cir. 1984) ("*Handgards II*").

Before submitting the issue of bad faith assertion to the jury, courts need not make a threshold legal determination that an accused infringer has established, by clear and convincing evidence, that the asserted patent is invalid.  *Id*. at 1288-89.  But to "prevent frustration of patent law by the long reach of antitrust law," "the jury should be instructed that a patentee's infringement suit is presumptively in good faith and that this presumption can be rebutted only by clear and convincing evidence."  *Handgards I*, 601 F.2d at 996.

## 2.2     Application

The Companion Order has eliminated some of the theories through which Defendant seeks to establish that this litigation was brought in bad faith.  Others remain viable.  The briefing on the Motion did not meaningfully address the other requirements for a Sherman Act § 2 claim, although it was mentioned obliquely several times in passing.  In light of the brevity with which patent misuse is addressed in the pleadings, and the cursory mention of the antitrust issues in the briefing, the Court and the parties discussed at the hearing on this Motion how

Defendant intends to establish the patent misuse claim at trial, and why the issue here is really an antitrust defense rather than exceptional case fees under 35 U.S.C. § 285.  This order only addresses the issues raised in the briefs.

Defendant raises six theories of improper conduct by Plaintiff that support its misuse defense.  The Court addresses each in turn.

### 2.2.1  *"Knowingly Attempting to Exclude a Licensee From Practicing Within the Bounds of the License"*

Defendant argues that because it has an implied license to the '426 Patent, this lawsuit was prosecuted in bad faith.  (Opp'n 11.)  For the reasons discussed in Section 1 and in the Companion Order, Defendant does not have an implied license to the '426 Patent.  Its bad faith litigation theory of patent misuse therefore may not proceed on this basis.

### 2.2.2  *"Asserting a Patent That It Knows is Invalid for Naming the Incorrect Inventors"*

Plaintiff argues that Defendant's theory of misuse based on incorrect inventorship of the '426 Patent fails because incorrect inventorship "is a technical defect in a patent that may be easily curable."  (Mot. 20 (quoting *B-K Lighting, Inc. v. Vision3 Lighting, Inc.*, 930 F. Supp. 2d 1102, 1128 (C.D. Cal. 2013) (quoting *Winbond Elecs. Corp. v. Int'l Trade Comm'n*, 262 F.3d 1363, 1371 (Fed. Cir. 2001)).)  Plaintiff argues that Defendant has not presented any evidence that Plaintiff "knew" the '426 Patent was invalid before asserting it in this case in 2010, and that to the contrary, Plaintiff has maintained that the incorrect inventor listing was an unintentional and technical error that has now been corrected.  (Mot. 21.)

Defendant responds that Plaintiff knew over a decade ago that the '426 Patent named the wrong inventors, but did not then attempt to correct the problem, instead opting to withdraw the

1   patent from the litigation between the parties that began in 2000 and ended through settlement in

2   2004 ("2000 Litigation").  (Opp'n 11, 13.)  Defendant notes that Plaintiff's Complaint in this

3   case made no mention of the inventorship issue, and that Plaintiff's Answer to Defendant's

4   counterclaims denied that the '426 Patent was invalid for any reason.  (Opp'n 12.)  Defendant

5   further observes that two months after Plaintiff's denial of any problem with the '426 Patent's

6   validity, Plaintiff filed a petition to correct inventorship with the PTO, but did not disclose the

7   existence of that petition to Defendant or the Court for another year.  (Opp'n 12.)  Defendant

8   believes that rather than a correction of a "technical defect," Plaintiff's attempt to change the

9   inventors listed on the patentee is an improper attempt to manufacture an earlier priority date to

10  avoid prior art.  (Opp'n 12.)  Further, Defendant argues that Plaintiff knew the patent named the

11  wrong inventors when it filed this lawsuit, and its doing so is further evidence of Plaintiff's

12  improper conduct.  (Opp'n 13-14.)  Likewise, Defendant argues that Plaintiff's decision to seek

13  correction in the PTO rather than by the Court in which it has already asserted the patent shows

14  that Plaintiff knew its "correction" would not withstand scrutiny.  (Opp'n 13-14.)

15      Defendant further argues that the patent is invalid as corrected, because the added

16  inventor, Darbee, was not actually an inventor.  (Opp'n 14.)  Defendant points to the caselaw

17  emphasizing the importance of documentary evidence to support a claim of inventorship, and

18  argues that here no documents contemporaneous with the alleged conception corroborate

19  Plaintiff's assertion that Darbee is an inventor of the '426 Patent.  (Opp'n 15.)  Defendant

20  acknowledges that Darbee and others signed declarations in support of Plaintiff's petition to

21  correct inventorship containing the required statement that Darbee's omission from the

22  application was not done with deceptive intention.  (Opp'n 15.)  But Defendant points out:

23  •    Darbee testified at deposition that he was never asked by anyone at Plaintiff whether he

24       was an inventor of the '426 Patent; rather, Plaintiff's counsel told Darbee that he should

25       just sign the form that would be sent to him, and that counsel did not even send a copy of

26       the '426 Patent for Darbee to review.  (Opp'n 15-16 (citing Sept. 6, 2013 Deposition of

27       Paul V. Darbee ("Darbee Dep.") 271:5-24, 272:24-273:8, Rowland Decl. Ex. 98).)

28

7

1      - Defendant does not mention the testimony on the same pages of the deposition

2         transcript that Darbee looked at the patent and knew that he had contributed to its

3         invention, and that while he did not think that counsel sent him a printed copy of

4         the patent, "[t]hey probably told me the patent number and I looked it up myself

5         because that's so easy to do." (Darbee Dep. 271:25-272:6, 272:24-273:8).

6   •  One of the originally-named inventors on the '426 Patent, Nguyen, testified that she did

7      not know why Darbee was omitted from the application or what his inventive

8      contribution might have been. (Opp'n 16 (citing Sept. 19, 2013 Deposition of Kim

9      Nguyen 119:20-122:17, 191:23:192:21, Rowland Decl. Ex. 121).)

10  •  Plaintiff's executive, Hayes, believed that Darbee was an inventor because the original

11     transmittal form in the file history was titled "Darbee, et al.," but Hayes had not reviewed

12     the entire file history. (Opp'n 16-17 (citing Sept. 11, 2013 Deposition of Pat Hayes

13     ("Hayes Dep.") 290:13-17, Sept. 12, 2013 Hayes Dep. 382:24-383:10, Rowland Decl.

14     95).) The file history contains a declaration specifically listing the named inventors and a

15     response from the PTO confirming that "Paul Darbee is not one of the inventors of this

16     application." (Opp'n 16-17 (citing Feb. 11, 1993 Applicant's Response to Notice to File

17     Missing Parts of Application, Rowland Decl. Ex. 107, Jun. 14, 1993 PTO Decision on

18     Petition, Rowland Decl. Ex. 111).)

19     Plaintiff responds that a patent's named inventors are presumed to be its true inventors,

20  and that the presumption extends to a corrected patent. (Reply 11 (citing *Winbond Elecs.*, 262

21  F.3d at 1371).) Noting that the accused infringer has the burden of presenting clear and

22  convincing evidence that correction was improper, Plaintiff argues that Defendant has not shown

23  that Darbee did not significantly contribute to the invention. (Reply 11.)

24     Plaintiff has not demonstrated that Defendant may not proceed on this theory. Defendant

25  has identified facts—including the troubling ten-year delay between the time the inventorship

26  issue was raised and Plaintiff's petition for correction—from which a jury may decide that the

27  '426 Patent is invalid for incorrect inventorship, and that Plaintiff's assertion of the '426 Patent

28  in this litigation with knowledge of its invalidity was in bad faith.

### 2.2.3   "Asserting Patents That It Knows Are Unenforceable as Being Barred by Laches and Estoppel"

Plaintiff argues that Defendant's theory of misuse based on laches fails because Defendant has presented no evidence of anticompetitive effect from Plaintiff's delay in asserting the '426 Patent, and because even after being accused of infringement of claims 2 and 3 in 2010, Defendant never changed the design of any of its remote controls, so there is no prejudice.  (Mot. 22.)

Defendant argues that because Plaintiff knew that its claims for infringement of the '426 Patent were barred by laches, it was bad faith to force Defendant to spend substantial time and money defending itself against those claims.  (Opp'n 19.)  Plaintiff responds that laches only bars specific acts of infringement and applies on a product by product basis, so absent a showing that a new product is "functionally equivalent" to an earlier product, an accused infringer may not take advantage of the laches period as to the earlier product.  (Reply 11.)

In support of the "functionally equivalent" language, which Plaintiff emphasizes, Plaintiff quotes *MGA, Inc. v. Centri-Spray Corp.*, 699 F.Supp. 610, 615 (E.D. Mich. 1987), with a "same" citation to *Symantec Corp. v. Computer Associates Int'l, Inc.*, 522 F.3d 1279, 1295 (Fed. Cir. 2008).  (Reply 11.)  Parties typically cite controlling authority before persuasive authority, and more recent cases before earlier cases.  Plaintiff's departure from that convention here may be explained by the fact that the 2008 Federal Circuit case holds that laches can apply only when the products were "the same or similar," which sounds like an easier standard to meet than the "functionally equivalent" standard articulated by the Eastern District of Michigan in 1987.

In any event, Plaintiff argues that in this case, it is accusing products with the "rotating favorite macro" feature that was only introduced in 2007.  (Reply 12.)  But Plaintiff does not address whether that feature was "similar" to the feature it previously accused.  And, as discussed in Section 2.2.4, Plaintiff does not explain why it initially accused in this lawsuit the very same products it accused in the prior suit, and only dropped its infringement contentions

1   against those products in September 2013.  In short, Plaintiff has not shown the absence of

2   genuine issues of material fact concerning this theory based on laches and estoppel.

3

4       2.2.4   *"Asserting Claims That It Knows Are Unenforceable As Being Barred By*

5           *Res Judicata"*

6

7       Plaintiff argues that Defendant's "issue/claim preclusion" argument is based on an

8   erroneous assumption that a patent previously asserted against a defendant can never be asserted

9   against that defendant again, even against a future product with a new feature.  (Mot. 18.)

10  Similarly to its argument discussed in Section 2.2.3, Plaintiff argues that it is asserting claims 2

11  and 3 of the '426 Patent against Defendant's products that contain a "rotating favorite channel

12  macro" feature that was not introduced until 2007, years after the litigation between the parties

13  that ended in 2004.  (Mot. 18-19.)

14      Defendant responds that starting with the 2010 notice letter, and continuing throughout

15  almost all of fact discovery, Plaintiff accused the very same single favorite channel macro

16  products of infringing claim 1 of the '426 Patent as it did in the prior suit, from which it

17  dismissed its '426 Patent infringement claims with prejudice.  (Opp'n 19-20.)  Defendant argues

18  that Plaintiff's decision to maintain those allegations throughout most of this suit, dropping them

19  only in September 2013, does not undermine, and in fact supports, a finding that Plaintiff's

20  earlier positions in this litigation were baseless and brought in bad faith.  (Opp'n 20.)

21      Plaintiff does not address this point in reply, instead repeating its correct but now non-

22  responsive argument that *res judicata* does not bar claims that could not have been asserted in

23  the prior action.  (Reply 12-13.)  That Plaintiff has now dropped its claims as to the old products

24  does not immunize it from liability if accusing those products in the first place was a position

25  taken in bad faith.  The harm from litigation brought in bad faith does not arise only upon an

26  unfavorable outcome, but instead accrues from having to defend the case.  *Handgards I*, 601

27  F.2d at 997.  Plaintiff has failed to demonstrate that Defendant may not proceed on this theory.

28

1            *2.2.5   "Asserting a Patent That It Knows is Invalid for Inequitable Conduct"*

2

3         Plaintiff argues that Defendant cannot satisfy the requirements for establishing

4    unenforceability due to inequitable conduct in the prosecution of the '426 or '067 Patents.  (Mot.

5    22.)  Proving inequitable conduct requires "clear and convincing evidence that the applicant

6    knew of the reference, knew that it was material, and made a deliberate decision to withhold it."

7    (Mot. 22 (quoting *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290 (Fed. Cir.

8    2011).)

9         As to the '426 Patent, Defendant's response is that the purported inventor, Darbee,

10   admitted that he saw a "CORE" remote control before the priority date of the '426 Patent.

11   (Opp'n 21.)  Defendant believes that "a reasonable jury could conclude that the reference was

12   intentionally withheld, because otherwise the claims would have been rejected," and that

13   Defendant has "made no showing that Mr. Darbee did not intend to withhold the reference."

14   (Opp'n 21.)

15        This argument ignores, or misapprehends, *Therasense's* deliberate, clear, and significant

16   change in the law.  In response to what it characterized as a "plague" of inequitable conduct

17   allegations, *Therasense* "tighten[ed] the standards for finding both intent and materiality in order

18   to redirect a doctrine that has been overused to the detriment of the public."  649 F.3d at 1290.

19   Now, "[i]ntent and materiality are separate requirements," and "a district court should not use a

20   'sliding scale,' where a weak showing of intent may be found sufficient based on a strong

21   showing of materiality, and vice versa."  *Id*.  "[T]he specific intent to deceive must be 'the single

22   most reasonable inference able to be drawn from the evidence.'  Indeed, the evidence 'must be

23   sufficient to *require* a finding of deceitful intent in the light of all the circumstances.'"  *Id*.

24   (citations omitted).  Defendant has not shown that its evidence of inequitable conduct in the

25   prosecution of the '428 Patent could require a finding of deceitful intent.

26        As to the '067 Patent, Defendant argues that during prosecution, the PTO rejected claims

27   1-3, 5-8, and 10 as obvious under Rumbolt (U.S. Patent No. 4,703,359) in view of the CORE

28   Reference Manual.  (Opp'n 22, Rowland Decl. Ex. 113.)  Claims 4 and 9 were objected to as

1   being dependent on a rejected base claim, "but would be allowable if rewritten in independent

2   form including all of the limitations of the base claim and any intervening claims."  (Opp'n 22,

3   Rowland Decl. Ex. 113.)  In response, the applicants told the examiner that they "elected to

4   amend independent claims 1 and 6 to include the subject matter of claims 4 and 9 that was

5   indicated to be allowable," and the examiner then allowed the claims "because subject matter

6   previously indicated as allowable have been incorporated into the claims."  (Opp'n 23, Rowland

7   Decl. Exs. 114, 115.)  Defendant argues that "[c]ontrary to UEI's assurances to the Examiner,

8   however, UEI's amendment to claim 1 did not include the subject matter of claims 3 and 4,

9   which the Examiner indicated to be the allowable subject matter," and that this mislead the

10  examiner.  (Opp'n 23 (citing Rowland Decl. Ex. 124, Tab F, at 191-94).)

11          First, Exhibit 124 consists of the first page of the Expert Report of Stephen D. Bristow

12  Regarding Invalidity of U.S. Patents Nos. 5,414,426; 5,614,906 and 6,587,067, followed by

13  eighteen pages bearing pagination and the words "Exhibit 124," but otherwise blank.  That is

14  unhelpful.  Assuming that those pages contained a comparison of the contents of previously

15  pending claims to the amended claims allowed by the examiner, and showed that not everything

16  in those prior claims made it into amended claims 1, 4, 6 and 9, the fact remains that the

17  applicant informed the examiner that it was going to take a course somewhat different from the

18  examiner's suggestion.  (Reply 14.)  Instead of simply re-writing claims 4 and 9 as independent

19  claims, the applicant informed the examiner that it "elected to amend independent claims 1 and 6

20  to include the subject matter of claims 4 and 9 that was indicated to be allowable."  (Rowland

21  Decl. Ex. 114.)

22          Defendant's argument that the resulting claims were broader than those contemplated by

23  the examiner's communication simply does not rise to the level of inequitable conduct.  The

24  amended claims were before the examiner in black and white, and were neither numerous nor

25  voluminous.  The examiner had an opportunity to review them before allowing them, and it was

26  clear that the applicant had not done exactly what the examiner suggested, because the applicant

27  said so.

28

1   Plaintiff has demonstrated that Defendant will be unable to make a sufficient showing on

2   an essential element of this theory, for which it has the burden of proof, and Defendant has not

3   rebutted that showing.  *Celotex*, 477 U.S. at 323.  Therefore, Defendant's patent misuse defense

4   may not be grounded in an inequitable conduct theory.

5

6         *2.2.6   "Asserting and Maintaining an Action For Infringement Of a Patent For*

7         *Which It is Undisputed That There is No Evidence of Actual Infringement"*

8

9   Defendant argues that Plaintiff's assertion of the '906 Patent was in bad faith because

10  Plaintiff admits it has no evidence of actual infringement.  (Opp'n 23-24.)  That position is

11  grounded in the lack of direct evidence of direct infringement proffered by Plaintiff, and by the

12  following admission by Plaintiff's 30(b)(6) witness:

13      Q:      Does UEI have any knowledge of anybody anywhere actually following the

14              steps described in the '906 patent?

15      A:      Not that I'm aware of.

16  (Sept. 12, 2013 Hayes Dep. 557:22-25, Rowland Decl. Ex. 95.)  That was an eyebrow-raising

17  admission, but there is more to the story.  Plaintiff contends that the use of Defendant's

18  "QuickSet" programming methods directly infringes the '906 Patent, that Defendant's manuals,

19  instructions, and tutorials encourage use of the QuickSet methods, and that one of Defendant's

20  employees, Caro, has used the method and has helped "a few" customers over the phone use the

21  methods.  (Reply 16.)  Defendant responds that Plaintiff has not shown that Caro successfully

22  programmed any remotes using the claimed methods, and that Plaintiff's circumstantial evidence

23  as to direct infringement by others fails as a matter of law.  (Opp'n 24.)

24      First, whether Plaintiff's expert has adequately explained how the actions Caro admitted

25  to performing read on the limitations of the '906 Patent is an issue of fact for trial.  Second, "a

26  finding of infringement can rest on as little as one instance of the claimed method being

27  performed during the pertinent time period."  *Lucent Technologies, Inc. v. Gateway, Inc.*, 580

28  F.3d 1301, 1317 (Fed. Cir. 2009).  Third, the Federal Circuit has held on multiple occasions

1    "that where an alleged infringer designs a product for use in an infringing way and instructs

2    users to use the product in an infringing way, there is sufficient evidence for a jury to find direct

3    infringement." *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1365 (Fed. Cir. 2012).  In

4    *Toshiba*, the Federal Circuit distinguished Defendant's principal case here, *ACCO Brands, Inc.*

5    *v. ABA Locks Mfr. Co.*, 501 F.3d 1307, 1313 (Fed. Cir. 2007), on the ground that in *ACCO*, the

6    instructions provided with the product only described non-infringing use.  *Toshiba*, 681 F.3d at

7    1365-66.  In short, "[d]irect infringement can be proven by circumstantial evidence."  *Vita-Mix*

8    *Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1326 (Fed. Cir. 2009).

9         As to Defendant's alleged defects in Plaintiff's inducement theory (Opp'n 25), "[a]

10   finding of inducement requires both knowledge of the existence of the patent and 'knowledge

11   that the induced acts constitute patent infringement.'"  *Commil USA, LLC v. Cisco Sys., Inc.*, 720

12   F.3d 1361, 1367 (Fed. Cir. 2013) (quoting *Global–Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct.

13   2060, 2068 (2011)).  By way of letter on March 1, 2010, Plaintiff notified Defendant of its

14   charge of infringement of the '906 Patent, including the specific charge that the "Quick Set-Up"

15   method infringed.  (Rowland Decl. Ex. 18.)  Whether Plaintiff will be able to prove direct

16   infringement and that Defendant knew that the induced acts constituted infringement is an issue

17   for trial.  But there is no dispute of fact that holds open Defendant's ability to proceed on a bad-

18   faith litigation patent misuse theory that Plaintiff pursued an infringement charge without any

19   evidence of infringement.

20

21        **2.3    Conclusion**

22

23        Assuming that Defendant has actually laid the groundwork to put on a Sherman Act § 2

24   case, it may not pursue that theory on the grounds discussed in Sections 2.2.1 (litigation in the

25   face of an implied license to the '426 Patent), 2.2.5 (litigation in the face of inequitable conduct

26   in the prosecution of the '426 and '067 Patents) or 2.2.6 (litigation in the face of no evidence of

27   infringement of the '906 Patent).

28

1

## DISPOSITION

2

3      As to Defendant's Eighth Affirmative Defense of License and Ninth Counterclaim of

4   Breach of Contract, the Motion is GRANTED.  As to Defendant's Tenth Affirmative Defense of

5   Patent Misuse, the MOTION is GRANTED IN PART AND DENIED IN PART.

6

7

8   IT IS SO ORDERED.

9   DATED: March 24, 2014

10

11                                      _____

12                                              Andrew J. Guilford
                                         United States District Judge
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28