UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 12-00329 AG (JPRx) | Date | April 21, 2014 |
|---|---|---|---|
| Title | UNIVERSAL ELECTRONICS, INC. v. UNIVERSAL REMOTE CONTROL, INC. | | |

| Present: The Honorable | ANDREW J. GUILFORD | |
|---|---|---|
| Lisa Bredahl | Not Present | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:          Attorneys Present for Defendants:

**Proceedings:**  **[IN CHAMBERS] ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTIONS TO EXCLUDE EXPERT TESTIMONY OF SHAWN BURKE AND FRANK BERNATOWICZ**

Defendant Universal Remote Control, Inc. ("Defendant") filed motions to exclude the testimony of Plaintiff Universal Electronics, Inc.'s ("Plaintiff") technical expert, Shawn Burke ("Burke Motion") and damages expert, Frank Bernatowicz ("Bernatowicz Motion") (collectively, "Motions"). (Dkt. Nos. 207, 212.) The Motions are GRANTED IN PART AND DENIED IN PART.

**BACKGROUND**

Trial is set for May 6, 2014. Defendant filed the Motions before the hearing on the parties' cross-motions for summary judgment. Certain aspects of the Court's Summary Judgment Orders impact the resolution of the present Motions, as will be discussed.

**LEGAL STANDARD**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 12-00329 AG (JPRx) | Date | April 21, 2014 |
|---|---|---|---|
| Title | UNIVERSAL ELECTRONICS, INC. v. UNIVERSAL REMOTE CONTROL, INC. | | |

Federal Rule of Evidence 702 provides that a witness qualified as an expert may offer opinion testimony if "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702. The burden of establishing the admissibility of expert testimony falls on the party seeking its admission. *See Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987). *Daubert* assigns the district court a "gatekeeping role." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993). "[T]he trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Id.* at 589.

An expert witness is allowed to offer opinions if such opinions "have a reliable basis in the knowledge and experience of his discipline." *Id.* at 592. "The gatekeeper role 'entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is . . . valid and of whether that reasoning or methodology properly can be applied to the facts in issue.'" *United States v. Laurienti*, 611 F.3d 530, 548 (9th Cir. 2010) (quoting *Daubert*, 509 U.S. at 592-93, 597). *Daubert* does not mandate the exclusion of all questionable evidence. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

Federal Rule of Civil Procedure 26(a)(2)(B)(i)-(ii) requires experts to provide a written report containing "a complete statement of all opinions the witness will express, and the basis and reasons for them" and "the facts or data considered by the witness in forming them." Rule 26(e) requires a party to supplement information provided in an expert report or given at the expert's deposition "if the party learns that in some material respect the disclosure or response is incomplete or incorrect." Rule 37(c)(1) "gives teeth" to Rule 26(e) "by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 12-00329 AG (JPRx) | Date | April 21, 2014 |
| --- | --- | --- | --- |
| Title | UNIVERSAL ELECTRONICS, INC. v. UNIVERSAL REMOTE CONTROL, INC. | | |

## ANALYSIS

### 1.    THE BURKE MOTION

The Burke Motion is 14 pages long.  After Defendant filed it, the Court decided the parties' summary judgment motions, simplifying the case significantly.  Yet Defendant's Reply in support of the Burke Motion ballooned to 24 pages, meaning that Plaintiff did not have an opportunity to respond to all of the material in it.  The Court appreciates the explanations, charts, and illustrations in the Reply, but will remain mindful of the procedural context in which they were provided.

### 1.1    Opinions Defendant Contends Were Not Included In Burke's Expert Report

#### 1.1.1   *Any Opinion That URC's Revised Manuals Induce Infringement of the '906 Patent*

Burke's Report asserts that certain of Defendant's user manuals instruct performance of the steps of United States Patent No. 5,614,906 ("'906 Patent").  (Burke Rep. 8, Burke Mot., Ex. A.)  Burke's report does not discuss certain revised user manuals.  Defendant contends that the revised manuals were freely available on the Internet, and that Burke read about them in multiple deposition transcripts.  (Burke Mot. 2.)  Defendant argues that despite Burke's access to this material, the first time he opined that the revised manuals instructed users to infringe was during redirect in the twelfth hour of his deposition.  (Jan. 30, 2014 Burke Dep. 406:9-413:12, Burke Mot. Ex. D.)

Plaintiff responds that Burke listed the revised manuals in his report as materials that he considered, and that Burke confirmed at his deposition that his opinions were "not different for either type of instruction manual."  (Burke Opp'n 3 (citing Burke Report Ex.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 12-00329 AG (JPRx) | Date | April 21, 2014 |
|----------|-------------------------|------|----------------|

| Title | UNIVERSAL ELECTRONICS, INC. v. UNIVERSAL REMOTE CONTROL, INC. |
|-------|---------------------------------------------------------------|

1, Burke Opp'n Ex. 2, Burke Dep. 166:6-8, Burke Opp'n Ex. 4).)  Plaintiff also notes that there are no Bates numbers on the revised manual that Defendant attached as Exhibit H to the Burke Motion, and that Defendant should not be allowed to exclude Burke's testimony about material Defendant failed to produce during the litigation.  (Burke Opp'n 4.)  Defendant argues that because the manuals "were available on the Internet," their non-production is irrelevant.  (Burke Mot. 2, Burke Reply 9.)

Defendant also argues that it did produce its announcement of the revised instructions, which included the text of the revised instructions and a comparison with the old instructions.  (Burke Reply 6, Ex. T.)  As Defendant points out, the revised method is significantly different.  The '906 Patent claim language requires "actuating sequentially and individually each one of the plurality of assignable user actuated switches or keys, to individually transmit each assigned effects observable command until the proper effect is observed."  The revised method involves pressing only one of the assignable user actuated keys.  While the Court makes no infringement determination at this point, the revised method is different enough from the old method—pressing the number keys one at a time, starting with 1, then 2, 3, etc. until the TV turns off—that fairness required Burke to express any opinion concerning the revised method in his expert report.

At the hearing on the Motions, Plaintiff argued that Burke in fact provided the allegedly missing opinions in a host of pages in his expert report (pages 48-51, 55-58, 66-69, 73-76, 94-97, 106-109, 132-135, and 170-173).  The Court has now reviewed those pages.  They do not contain an opinion on pressing only a single button.  For example, at page 52, Burke reports:

> I personally followed the instructions provided by URC to exercise its "Quick Setup feature, which URC states I should try first . . . . While holding down the DVD button, I began to press the number keys, one number at a time, until the Sony DVD player turned off.  I released the DVD button to save the code. Thereafter I confirmed that the code was saved and that the URC-A6 was able to control this DVD player's various

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 12-00329 AG (JPRx) | Date | April 21, 2014 |
|---|---|---|---|
| Title | UNIVERSAL ELECTRONICS, INC. v. UNIVERSAL REMOTE CONTROL, INC. | | |

> functions. I repeated these same steps for the Samsung DVD player, and observed the same result and subsequent functionality, except the number key that turned off this DVD player was different tha[n] for the Sony DVD player.

Plaintiff's counsel argued at the hearing that this really disclosed pressing a single button because other discovery materials show that in Defendant's remote controls, Sony is assigned the number 1 button in the Quick Setup mode. But Burke does not say so in the many cited pages of his report. There, he does not disclose in what order he pressed the buttons, or how many he pressed. Perhaps that ambiguity served some strategic purpose, as it would have been simple to report which buttons he pressed in each sequence. But whatever the reason, Burke simply did not express the opinion that Plaintiff now wishes he had.

Plaintiff identifies a dispute over whether the revised manuals were actually used, but that dispute is not germane to the timeliness of Burke's opinion concerning the revised method. Instead, the question of which manuals were actually used is simply an issue of proof for trial.

Plaintiff did not identify any part of Burke's report that provided an opinion regarding infringement by the revised Quick Set-Up method. Merely listing the revised manuals in a mass of material Burke considered is insufficient. The Burke Motion is **GRANTED** on this point.

### 1.1.2  *Any Opinion That a Remote That Fails to Match With a Device Infringes the '906 Patent*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 12-00329 AG (JPRx) | Date | April 21, 2014 |
| --- | --- | --- | --- |
| Title | UNIVERSAL ELECTRONICS, INC. v. UNIVERSAL REMOTE CONTROL, INC. | | |

Defendant argues that Burke should be precluded from testifying that unsuccessful attempts to perform the steps of the '906 Patent show infringement. (Burke Mot. 3.) In his expert report, Burke described how his use of the accused remote controls' "Quick Setup" feature to "match" the remote to DVD players infringed claim 1. (Burke Rep. 48-50, Burke Mot. Ex. A.) At Burke's deposition, he was repeatedly asked whether unsuccessful use of the Quick Setup method—where the user tries but fails to match the remote to the device—would infringe. Defendant argues that Burke avoided giving an opinion on that question at his deposition for an uninterrupted half-hour. (Burke Mot. 4 (citing Jan. 30, 2014 Burke Dep. 117:20-140:17, Burke Mot. Ex. D).) Plaintiff responds that the hypotheticals Defendant's counsel posed to Burke were unclear or used language not used in the claims. (Opp'n 5.)

From a review of the deposition transcript, it appears that Burke gave complicated and borderline evasive answers to fairly simple questions on this topic. Although the answers may have been technically responsive, they did not leave the impression of candor. The questioning attorney might have felt frustration. So might the jury.

The Burke Motion is **GRANTED IN PART** on this point. On this subject, Burke is now limited to his deposition responses. *See* Fed. R. Civ. P. 37(c)(1).

### 1.1.3   *Any Opinion on the Doctrine of Equivalents or § 112 Means-Plus-Function Equivalence*

Defendant argues that Burke should be precluded from testifying about the doctrine of equivalents or applying an equivalence analysis to means-plus-function claims because he failed to offer opinions on those matters in his report and deposition testimony. (Burke Mot. 5.) Defendant notes that the root "equival" appears only twice in Burke's expert report, both times in the discussion of legal standards, and that Plaintiff's infringement contentions likewise do not discuss equivalents. (Burke Mot. 5.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 12-00329 AG (JPRx) | Date | April 21, 2014 |
|---|---|---|---|
| Title | UNIVERSAL ELECTRONICS, INC. v. UNIVERSAL REMOTE CONTROL, INC. | | |

Plaintiff's response is unconvincing. Plaintiff first argues, unobjectionably, that Burke's failure to use the word root "equivalent" or "equivalence" is not fatal because a patentee is not required to recite "magic words" to set forth an equivalence analysis. (Burke Opp'n 6-7 (citing *Malta v. Schulmerich Carillons, Inc.*, 952 F.2d 1320, 1327 n.5 (Fed. Cir. 1991) ("While *Lear Siegler* does not go so far as to require recitation of the magic words 'function', 'way', and 'result', we think that it at least requires the *evidence* to establish *what* the function, way, and result of *both* the claimed device and the accused device are, and *why* those functions, ways, and results are substantially the same.")).)

But then Plaintiff argues that Burke provided equivalents/equivalence opinions because his report used the words "way" and "same result" in close proximity—even though those words were not used to express anything having to do with the doctrine of equivalents or means-plus-function equivalence. Plaintiff quotes the following portion of Burke's report in support of its position:

> I personally followed the instructions provided by URC to exercise its "Quick Setup" feature, which URC states is the "fastest and easiest" **way to program** this remote, in order to match the UR4U-MDVR-CHD2 first to a Sony DVD player, and then to a Samsung DVD player. I first turned on the Sony DVD player, then pointed the UR4U-MDVR-CHD2 toward it and pressed and held the DVD button. While holding down the DVD button, I began to press the number keys, one number at a time, until the Sony DVD player turned off. I released the DVD button to save the code. Thereafter I confirmed that the code was saved and that the UR4U-MDVR-CHD2 was able to control this DVD player's various functions. I repeated these same steps for the Samsung DVD player, and **observed the same result and subsequent functionality**, except the number key that turned off this DVD player was different that for the Sony DVD player. From this as well as the other information identified above I have determined that the program of the UR4U-MDVR-CHD2 necessarily assigns an effects observable

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 12-00329 AG (JPRx) | Date | April 21, 2014 |
|---|---|---|---|
| Title | UNIVERSAL ELECTRONICS, INC. v. UNIVERSAL REMOTE CONTROL, INC. | | |

command from a plurality of command sets to a respective plurality of
number keys.

(Burke Report 106, Burke Opp'n Ex. 1 (emphasis in Opp'n).)  This has nothing to do
with equivalents/equivalence, and instead simply describes Burke's infringement analysis
of a programming mode used to match a remote to two different DVD players.  Plaintiff's
argument that Burke preserved the right to opine on equivalents/equivalence by merely
using the words "way" and "same result"—in a context having nothing to do with
equivalence— is frivolous.  It is also ironic, given Plaintiff's citation to caselaw
explaining that the issue is the substance of the equivalence analysis, not whether "magic
words" are present.

No better is Plaintiff's argument that means-plus-function terms literally cover
equivalents to the corresponding structure.  (Burke Opp'n 8.)  That such infringement by
equivalents is "literal" does not mean that Burke was excused from explaining how an
accused structure is an equivalent.

"Counsel must remember that they are not only advocates for their clients; they are also
officers of the court and are expected to assist the court in the administration of justice,
particularly in difficult cases involving complex issues of law and technology."  *Allen
Eng'g Corp. v. Bartell Indus.*, 299 F.3d 1336, 1356 (Fed. Cir. 2002).  "Given the wide
variety of lawsuits that are brought in district courts, it is incumbent on trial counsel to
assist the court and to fully and fairly present the legal issues in the case within the
applicable statutory and common law framework relevant to the factual dispute before the
court for resolution."  *Id.*

The Burke Motion is **GRANTED** on this point.

### 1.1.4  *Any Opinions on Invalidity Issues About Which Burke Declined to Answer Questions at Deposition*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 12-00329 AG (JPRx) | Date | April 21, 2014 |
|---|---|---|---|
| Title | UNIVERSAL ELECTRONICS, INC. v. UNIVERSAL REMOTE CONTROL, INC. | | |

Defendant requests exclusion of testimony concerning the '426 Patent and '906 Patent. Because infringement of the '426 Patent is no longer a trial issue, the Court addresses only the testimony concerning the '906 Patent. Defendant argues that Burke did not answer in his report or deposition testimony whether a prior art reference would read on the claims if a non-assignable key is pressed down at the same time as each of the assignable keys. (Burke Mot. 6.) Plaintiff asserts that Burke did respond to questioning on that subject. (Opp'n 10.)

Burke initially answered the question, but then asked for the question to be repeated "to make sure I gave you the correct answer to that." (Jan. 30, 2014 Burke Dep. 360:5-23, Burke Mot. Ex. D.) The following question and answer were then exchanged:

> **Q:** In your claim construction, can some other key which is not an assignable user actuated switch or key, be pressed at the same time as the -- each of the plurality of assignable user actuated switches or keys are pressed, and in that situation would the fact that that other key is being held cause that prior art to no longer read on the claim.
> [objection]
> **A:** No longer read on the claim.
> [objection]
> **A:** To not read on it. To not read on it. I'm going to have to think about that one. I'm sorry. I'm going to have to think about that one. I know that in order for a device to read on the language of Claim 1, it has to have all of the elements present here, which we've talked about. I have to think about that hypothetical. It's late in the day. I do want to give it some careful thought.

(Jan. 30, 2014 Burke Dep. 360:24-361:18, Burke Mot. Ex. D.) Thus, Burke did not answer the question.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 12-00329 AG (JPRx) | Date | April 21, 2014 |
|---|---|---|---|
| Title | UNIVERSAL ELECTRONICS, INC. v. UNIVERSAL REMOTE CONTROL, INC. | | |

As to the specific question that Burke did not answer, along with colorable variations, the Burke Motion is **GRANTED**.

### 1.2 Defendant's Challenge to Burke's Qualifications to Render Certain Opinions

#### 1.2.1 Burke's Opinion on Induced Infringement

Defendant argues that Burke should not be allowed to testify that Defendant induced infringement of the claimed methods because (1) that is a legal conclusion, and (2) Burke admitted that he did not know whether it was possible to induce infringement without knowledge of the patent.  (Burke Mot. 8.)  Plaintiff responds that an expert's "testimony need not establish the ultimate question of infringement to be relevant."  (Burke Opp'n 14 (quoting *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1326 (Fed. Cir. 2009).)

Burke's testimony concerning indirect infringement need not establish the ultimate legal question, and it is relevant.  Defendant can cross-examine Burke on his understanding of the words he uses.  The Burke Motion is **DENIED** on this point.

#### 1.2.2 Burke's Opinion on the Scope of the 2004 License Agreement

This portion of the Burke Motion is **MOOT** in light of the Court's Summary Judgment Orders.

#### 1.2.3 Burke's Testimony on the Publication Date of Any References With a Copyright Notice

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 12-00329 AG (JPRx) | | Date | April 21, 2014 |
|---|---|---|---|---|
| Title | UNIVERSAL ELECTRONICS, INC. v. UNIVERSAL REMOTE CONTROL, INC. | | | |

Defendant **WITHDRAWS** this argument in light of the Court's summary judgment ruling.  (Burke Reply 22.)

### 1.3    Burke's Testimony Regarding Direct Infringement

#### 1.3.1   Use of Internet User Review to Establish the Number of Times the Asserted Methods Have Been Performed

Defendant argues that Burke should not be allowed to introduce hearsay evidence of anonymous internet reviews to show that Defendant's customers performed the claimed methods.  (Burke Mot. 11.)  Defendant argues that while Federal Rule of Evidence 703 allows an expert to rely on hearsay if "experts in the particular field would reasonably rely on" it, "Rule 703 cannot be used as a backdoor to get the evidence before the jury." (Burke Mot. 11 (quoting *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1373 (Fed. Cir. 2013) *cert. denied*, 134 S. Ct. 900 (2014)).)  Defendant acknowledges that Burke personally relies on anonymous online product reviews when making purchasing decisions, but argues that Burke's personal purchasing practices are immaterial to what experts in the relevant field would rely upon.  (Burke Mot. 12.)

In opposition, Plaintiff re-argues a number of points Defendant conceded in its opening papers, and Plaintiff does not directly address the question of whether experts in the relevant field reasonably rely on the types of anonymous internet reviews at issue. Instead, Plaintiff argues that Burke relies on the reviews for a "very limited purpose": "that users have in-fact used their remote controls and performed the claimed steps for programming."  (Burke Opp'n 18.)  But that is precisely the "truth of the matter asserted" that Plaintiff argues Defendant failed to identify.  The only case Plaintiff cites supporting the admissibility of the challenged material is *In re Ethicon, Inc.*, 2014 U.S. Dist. LEXIS 15351, *2609-2610 (S.D. W. Va. Jan. 15, 2014), which Plaintiff characterizes as "permitting expert witness to rely on websites such as FDA.gov and WebMD.com for background where expert's technical opinions on design flaws were not based on these

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 12-00329 AG (JPRx) | Date | April 21, 2014 |
|---|---|---|---|
| Title | UNIVERSAL ELECTRONICS, INC. v. UNIVERSAL REMOTE CONTROL, INC. | | |

sources." (Burke Opp'n 18-19.)  But here, the **facts** reported in the anonymous internet reviews are precisely what Burke intends to testify about to establish a factual element of liability.

The Burke Motion is **GRANTED** on this point.

### 1.3.2   Reliance on Certain Deposition Testimony to Prove Direct Infringement

Defendant **WITHDRAWS** this portion of the Burke Motion.  (Burke Reply 24.)

### 1.4   Burke's Testimony Regarding Whether the Scope of the Licensed '751 Patent Encompasses the Asserted Claims of the '426 Patent

As Defendant acknowledges in its Reply, this portion of the Burke Motion is **MOOT** in light of the Court's Summary Judgment Orders.  (Burke Reply 24.)

## 2.   THE BERNATOWICZ MOTION

### 2.1   Bernatowicz's Failure to Apportion Lost Profits

The Court addressed this issue in denying Defendant's request for summary judgment that Bernatowicz needed to apportion his lost profits analysis.  (Dkt. No. 222.) Defendant's Reply revisits that issue in response to Plaintiff's Opposition, and perhaps to some degree in response to the Court's Summary Judgment Order.  Defendant makes certain inarguable points, for example, that *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538 (Fed. Cir. 1995) (en banc), could not have overruled *Garretson v. Clark*, 111 U.S. 120 (1884).  (Bernatowicz Reply 3.)  But *Rite-Hite* relied extensively on *General Motors Corp. v. Devex Corp.*, 461 U.S. 648 (1983) and *Aro Mfg. Co. v. Convertible Top*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 12-00329 AG (JPRx) | Date | April 21, 2014 |
|----------|-------------------------|------|----------------|
| Title | UNIVERSAL ELECTRONICS, INC. v. UNIVERSAL REMOTE CONTROL, INC. | | |

*Replacement Co.*, 377 U.S. 476 (1964), both decided under a later patent damages statute that differs significantly from *Garretson*'s. To be sure, Judge Nies, dissenting in *Rite-Hite*, argued at length that controlling precedent required the apportionment of lost profits. 56 F.3d at 1565-67. But the majority's decision is, of course, the law. *See Boyle v. Zacharie*, 31 U.S. 348 (1832).

Defendant also argues that Part A.I of *Rite-Hite* "did not involve or discuss apportionment and thus is not precedential with respect to that issue." (Bernatowicz Reply 3.) Part A.I of *Rite-Hite* does not use the word "apportionment." But *Rite-Hite* discusses the concept of apportionment, just as Defendant's lead case, *Ferguson Beauregard/Logic Controls, Div. of Dover Res., Inc. v. Mega Sys.*, 350 F.3d 1327, 1346 (Fed. Cir. 2003), discusses the concept using the word "allocation" instead of "apportionment." And Judge Nies certainly understood Part A.I of *Rite-Hite* to involve the apportionment question, since she spent several pages of her response to that section urging that "apportionment" (the same concept of apportionment that Defendant urges) should be required, using the words "apportion" or "apportionment" twelve times in doing so. 56 F.3d at 1557, 1565-66, 1568.

Holmes told the story of a "Vermont justice of the peace before whom a suit was brought by one farmer against another for breaking a churn. The justice took time to consider, and then said that he had looked through the statutes and could find nothing about churns, and gave judgment for the defendant." Oliver Wendell Holmes, Jr., *The Path of the Law*, 10 Harv. L. Rev. 457, 474 (1897). As discussed in Section 1.1.3, we are concerned with concepts, not magic words. None of this is to trivialize Defendant's *Garretson* argument, which has been made at greater length elsewhere. *See, e.g.,* Eric E. Bensen, *Apportionment of Lost Profits in Contemporary Patent Damages Cases*, 10 Va. J.L. & Tech. 8 (2005). But the Court will not here rehash the analysis in the Summary Judgment Order.

As the Court held in the Summary Judgment Order, Defendant will need to address the merits of Bernatowicz's lost profit opinions at trial. The Bernatowicz Motion is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 12-00329 AG (JPRx) | Date | April 21, 2014 |
|---|---|---|---|
| Title | UNIVERSAL ELECTRONICS, INC. v. UNIVERSAL REMOTE CONTROL, INC. | | |

**DENIED** on this point.

### 2.2    Bernatowicz's Analysis of *Panduit* Factor 2

Defendant argues that lost profits are recoverable only if the patentee can satsify the four factor *Panduit* test.  (Bernatowicz Mot. 6 (citing *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978)).)  Defendant focuses on *Panduit* factor 2, which requires the patentee to prove an absence of acceptable non-infringing substitutes.  (Bernatowicz Mot. 6.)  The Court already noted that the *Panduit* factors are not the exclusive way of showing the but-for causation needed to establish lost profits.  (Order on Def.'s MSJ, Dkt. No. 222 41 (quoting *Rite-Hite*, 56 F.3d at 1548).)  But Defendant's arguments can be understood as not limited solely to the *Panduit* framework, and the Court addresses each on its specific merits.  Defendant argues that Bernatowicz separated Defendant's sales into four "cable segments" without justification: (1) Time Warner; (2) Bright House; (3) Charter Cable, and (4) Cable (Other).  (Bernatowicz Mot. 7.)  Those market segments are addressed in Sections 2.2.1 through 2.2.3.

### 2.2.1    *Lost Profits Related to Time Warner*

Defendant argues that while Bernatowicz asserts that the parties have sold Time Warner 76% of its remotes since 2006, Bernatowicz conducts no analysis of the other 24% to see whether any qualify as non-infringing substitutes.  (Bernatowicz Mot. 8.)  Plaintiff responds that the Court's summary judgment rulings have streamlined the case to focus on events occuring after March 2010, and that Bernatowicz concluded that there were no effective competitors for Time Warner's business other than the parties during the relevant period.  (Bernatowicz Opp'n 8-9.)  Defendant also argues that Bernatowicz did not consider Defendant's own noninfringing remotes, such as the Goldstar GHV 597-052.  (Bernatowicz Mot. 8-9.)  But Defendant makes no clear showing that the Goldstar GHV 597-052, which it has sold since 1994, would have been an acceptable substitute to Time Warner for the sales at issue, or that Bernatowicz needed to consider it.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 12-00329 AG (JPRx) | Date | April 21, 2014 |
|---|---|---|---|
| Title | UNIVERSAL ELECTRONICS, INC. v. UNIVERSAL REMOTE CONTROL, INC. | | |

Defendant also argues that Bernatowicz did not analyze the possibility that Contec, a third-party with a license to the '426 Patent, could have sold Time Warner a noninfringing substitute. (Bernatowicz Mot. 8-9.) Plaintiff responds that Bernatowicz opined that Contec was not a viable supplier, and points out that Contec does not have a license to the '906 Patent. (Bernatowicz Opp'n 10.) Plaintiff also identifies a number of documents in which the parties and Time Warner regarded the parties as the two major competitors for Time Warner's business. (Bernatowicz Opp'n 10.) Plaintiff further points out that while Defendant argued that Time Warner purchases remotes from Motorola, those sales by Motorola were actually to an unaffiliated Canadian company, and Plaintiff was in fact the manufacturer of those Motorola remotes. (Bernatowicz Opp'n 12 (citing Gutman Decl. In Supp. of Bernatowicz Opp'n ¶ 8).) Defendant seems to concede this point in reply, noting that the moving papers inadvertently referenced an irrelevant page, which Defendant says should be disregarded. (Bernatowicz Reply 6.)

Defendant argues that Bernatowicz did not consider whether versions of Defendant's products modified to omit the accused features could have been acceptable non-infringing substitutes. (Bernatowicz Mot. 11 (citing *Grain Processing Corp. v. American Maize-Products Co.*, 185 F.3d 1341, 1354 (Fed. Cir. 1999) (holding that "[b]ecause consumers find [certain aspects of the asserted claims] 'irrelevant,' the prospect of an available, acceptable noninfringing substitute expands because a competitor may be able to drop or replace the 'irrelevant' elements from its product.")).) Defendant argues that Time Warner carefully specifies the features it demands, and that the specific accused functionalities were not required. (Bernatowicz Mot. 11.) Plaintiff responds that Time Warner's requests for proposals identify only the minimum requirements, so those specifications do not show that other features are irrelevant. (Bernatowicz Opp'n 8.) Plaintiff notes that in its bid to Time Warner, Defendant specifically highlighted the "Quick Set" method that Plaintiff accuses of infringing the '906 Patent. (Bernatowicz Opp'n 15 (citing April 8, 2010 Defendant's Response to TWC Remote Control RFP 5, Kennelly Decl. Ex. 12).)

Defendant argues that Bernatowicz fails to consider any substitutes for the '906 Patent.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 12-00329 AG (JPRx) | Date | April 21, 2014 |
|---|---|---|---|
| Title | UNIVERSAL ELECTRONICS, INC. v. UNIVERSAL REMOTE CONTROL, INC. | | |

(Bernatowicz Mot. 12.)  Defendant argues that the technology covered by the '067 Patent became an acceptable noninfringing substitute when the '067 Patent expired on December 17, 2007.  (Bernatowicz Mot. 12.)  Defendant quotes Bernatowicz's "admission" that "***the '906 patent is an alternative . . . method for programming a remote***."  (Bernatowicz Mot. 12 (quoting Bernatowicz Rep., Ex. 150 24) (emphasis and ellipses in Mot.); Bernatowicz Reply 8.)  The three words omitted by Defendant's ellipses are "***and commercially preferable***."  Including those three words would have (1) assisted the Court in making its own determination of their importance, (2) avoided the impression that Defendant omitted the material because it undercut its argument, and (3) better enabled Defendant to itself assess and develop its argument.  *See The Ninth Annual Judicial Conference of the United States Court of Appeals for the Federal Circuit*, 140 F.R.D. 57, 88 (1992) (comments of Friedman, J.) (describing sense-changing ellipses as "self-defeating.").

The Bernatowicz Motion is **DENIED** on this point.

### 2.2.2   *Lost Profits Related to Bright House*

Defendant argues that Bernatowicz acknowledged that there are non-infringing substitutes for the Bright House "market," and therefore used a market share approach to satisfy *Panduit* factor 2.  (Bernatowicz Mot. 13.)  Defendant criticizes Bernatowicz's approach, arguing that by separating Bright House into one "market" separate from "all other cable," Bernatowicz is able to inflate the market share, thus inflating damages.  (Bernatowicz Mot. 13.)  Defendant cites Plaintiff's 2012 Annual Report (10-K) to show that the relevant market includes all "subscription broadcast companies."  (Bernatowicz Mot. 14, Ex. 163 6.)  Defendant also points out that Time Warner requires the parties to sell remotes to Bright House, a Time Warner affiliate, on the same terms as they do to Time Warner.  (Bernatowicz Mot. 14 (citing TWC Remote Control RFP Survey, Ex. 176 UE186468).)  Defendant also cites Bernatowicz's admission that he could have presented his market share analysis on a customer-by-customer basis.  (Bernatowicz Mot. 14 (citing

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 12-00329 AG (JPRx) | Date | April 21, 2014 |
|---|---|---|---|
| Title | UNIVERSAL ELECTRONICS, INC. v. UNIVERSAL REMOTE CONTROL, INC. | | |

Jan. 31, 2014 Bernatowicz Dep. 154-55, Ex. 151).)

Plaintiff responds that Bernatowicz did nothing wrong in using Bright House's real world market share data, and there was no inflation from doing so because he applied the market share only to Bright House, not to any other customers. (Bernatowicz Opp'n 15-16.) Plaintiff distinguishes Defendant's citation to *BIC Leisure Prods. v. Windsurfing Int'l*, 1 F.3d 1214 (Fed. Cir. 1993) by arguing that *BIC Leisure* involved two different markets at very different price points, but that here, the parties are competing for the exact same sales. (Bernatowicz Opp'n 16-17.)

Defendant points to facts that support treating all remote control purchasers together, and certain facts that support treating them as separate markets—such as Bright House's ability to take advantage of terms negotiated by Time Warner, which distinguishes Bright House from the other cable company customers in the market. Defendant has not demonstrated that the issues it raises should be addressed by exclusion, rather than cross-examination. The Bernatowicz Motion is **DENIED** on this point.

### 2.2.3   *Lost Profits Related to All Other Cable Providers*

Defendant raises similar criticisms regarding Bernatowicz's decision to exclude satellite television providers from his market analysis. (Bernatowicz Mot. 15.) This issue is more appropriately addressed through cross-examination.

The Bernatowicz Motion is **DENIED** on this point.

### 2.2.4   *Lost Profits Related to a Statistic Bernatowicz Uses*

Defendant argues that Bernatowicz's market share calculations depend on an arbitrarily generated statistic: that there are 2.5 cable boxes and remotes per U.S. household. (Bernatowicz Mot. 16.) Defendant argues that Bernatowicz appears to have derived the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 12-00329 AG (JPRx) | Date | April 21, 2014 |
|---|---|---|---|
| Title | UNIVERSAL ELECTRONICS, INC. v. UNIVERSAL REMOTE CONTROL, INC. | | |

statistic from a website that reported a satellite television provider's "churn figure" of 1.53 percent in the second quarter of 2012, but did not explain how the 1.53 percent figure yielded the 2.5 remotes per household. (Bernatowicz Mot. 17.) And Defendant argues that a satellite television provider's statistic would have no relevance because Bernatowicz specifically excluded satellite television providers from his analysis. (Bernatowicz Mot. 17.) Defendant argues that Bernatowicz's market share calculations based on this statistic produce impossible results, such as the parties' 2012 market shares for Bright House totaling 124.6%, when 100% is the maximum market share possible. (Bernatowicz Mot. 17.)

Plaintiff does not directly respond to the criticism that this methodology results in impossible market shares. (Bernatowicz Opp'n 18-19.) That is a bad sign, as the Court considers the known or potential rate of error in the *Daubert* analysis. 509 U.S. at 594. But at his deposition, Bernatowicz at least explained the general basis and motivation for the calculation in a manner that makes it seem like a reasonable estimate of demand, rather than the random statistic than Defendant argues it to be. (Jan. 31, 2014 Bernatowicz Dep. 122:7-125:3, Kenneally Decl. Ex. 14).

The importance of the churn rate and the reliability of the methods at issue is not entirely clear to the Court on the present record. The Court **RESERVES RULING** on this issue until hearing from Bernatowicz at trial, perhaps first outside of the presence of the jury.

### 2.3 Defendant's Contention that Bernatowicz Used an Arbitrary Royalty for the '906 Patent

Turning its focus to Bernatowicz's reasonable royalty opinion, Defendant argues that Bernatowicz's calculation of a 3% "baseline royalty rate" from four license agreements is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 12-00329 AG (JPRx) | Date | April 21, 2014 |
|---|---|---|---|
| Title | UNIVERSAL ELECTRONICS, INC. v. UNIVERSAL REMOTE CONTROL, INC. | | |

flawed. (Bernatowicz Mot. 18.) Defendant argues that Bernatowicz failed to show that those licenses are technologically and economically comparable to the agreement that would result from the hypothetical negotiation. (Bernatowicz Mot. 18 (citing *Wordtech Sys. v. Integrated Networks Solutions, Inc.*, 609 F.3d 1308, 1320 (Fed. Cir. 2010)).) Defendant points out that (1) none of the four agreements cover the '906 Patent, but do cover a host of other intellectual property; (2) two of the agreements resulted from litigation, and Bernatowicz did not evaluate the effect of the litigation on the rate; (3) the licenses have a greater geographic and subject matter scope than the hypothetical license, some covering the world, and one covering twenty-one patents. (Bernatowicz Mot. 19-21.) Defendant argues that because Bernatowicz failed to identify most of the relevant facts, and failed to relate the key facts from those agreements to the hypothetical negotiation, his reasonably royalty opinion must be excluded. (Bernatowicz Mot. 21 (citing *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 79 (Fed. Cir. 2012)).)

Bernatowicz's reasonable royalty analysis runs from page 44 to page 66 of his report, although the very wide margins makes those 22 pages sound longer than they are. In those pages, Bernatowicz does not even attempt to compare the '906 Patent to the agreements that he asserts establish a baseline royalty rate for that patent. Much less does he actually "account[] for the technological and economic differences between those licenses" and the '906 Patent. *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 873 (Fed. Cir. 2010). "When relying on licenses to prove a reasonable royalty, alleging a loose or vague comparability between different technologies or licenses does not suffice." *LaserDynamics*, 694 F.3d at 79. At the hearing, Plaintiff argued that Bernatowicz conducted that analysis at other pages of his report: 24-29 and 143-46. But those pages contain only an extremely brief high-level description of each patent, and do not contain an analysis that accounts for the technological and economic differences between the licenses.

Nor did Bernatowicz account for how the litigation context of his "baseline" licenses was affected by the litigation from which they arose. *See ResQNet*, 594 F.3d at 872 ("litigation itself can skew the results of the hypothetical negotiation"). Plaintiff argued

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 12-00329 AG (JPRx) | Date | April 21, 2014 |
|----------|-------------------------|------|----------------|
| Title | UNIVERSAL ELECTRONICS, INC. v. UNIVERSAL REMOTE CONTROL, INC. | | |

at the hearing on the Motions that Bernatowicz did account for how litigation affected the license terms.  Plaintiff cites to page 54 of Bernatowicz's report, which states that:

> the respective settlement amounts were developed based on a balance of the litigation costs UEI would incur to continue on with the litigation, UEI's desire to police its intellectual property, the ability of the infringer/licensee to pay a royalty and its financial position, the number of infringing products and the extent of the infringing use, and UEI's desire to avoid litigation that would likely be unprofitable.

That is merely a list of factors Bernatowicz could have analyzed when evaluating the licenses, but his report does not contain any such analysis.  Rather, Bernatowicz simply assumes that the litigation licenses represent "the lowest royalty rate or the 'floor' for compensation for the accused infringer's authorized use of UEI's patent rights that UEI is willing to accept even without the assumption that the patent rights are valid and infringed . . . ."  (Bernatowicz Rep., Ex. 150 51).  This ignores that a litigation defendant may pay simply to "avoid[] the risk and expense of litigation."  *Rude v. Westcott*, 130 U.S. 152 (1889).  While settlement licenses may be considered, the patentee has the burden to prove the comparability of the licenses.  *ResQNet*, 594 F.3d 860 (2010).  Bernatowicz did not do so.

Plaintiff argues that Bernatowicz considered nineteen licenses and selected the four most comparable ones.  (Bernatowicz Opp'n 19.)  But this response ignores that Bernatowicz's report also covered the '426 and '067 Patents, and some of the licenses covered those patents, but not the '906 Patent.  Plaintiff is correct that comparable licenses need not cover the same patents, but Plaintiff has made much of the distinction between the '067 and '906 Patents in the lost profits context, and cannot turn around and argue that those assertedly important distinctions disappear when they are unhelpful to Plaintiff.

Further, Plaintiff responds by citing things that Bernatowicz **did** in preparing his opinion:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 12-00329 AG (JPRx) | Date | April 21, 2014 |
|----------|--------------------------|------|----------------|
| Title | UNIVERSAL ELECTRONICS, INC. v. UNIVERSAL REMOTE CONTROL, INC. | | |

"reviewed the licensed rights, had discussions with UEI's management surrounding the circumstances of the various licenses, performed a detailed review of the financial terms, and had independent discussions with UEI's technical expert regarding this matter and the details of each patent at issue."  (Bernatowicz Opp'n 20 (citing Bernatowicz Rep. 24-29, 143-146).)  Plaintiff argues that "[u]sing this information, Mr. Bernatowicz arrived at his royalty base."  (Bernatowicz Opp'n 20.)  First, this discussion concerns the royalty rate, not the royalty base, so the Court assumes that Plaintiff meant "base (as in starting) **rate**."  More importantly, Plaintiff cites no authority for the admissibility of expert testimony where the expert **considers** relevant material, but fails to provide an opinion explaining how that material leads to his conclusions.  To the contrary, "[a] court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec. v. Joiner*, 522 U.S. 136, 146 (1997).

The Bernatowicz Motion is **GRANTED** as to reasonable royalty damages.

### 2.4    Price Erosion

Bernatowicz opines that Defendant's infringement caused price erosion in Plaintiff's sales to Time Warner and Bright House from August 2010 through 2012.  (Bernatowicz Rep. 66-67, Rowland Decl. Ex. 150.)  Defendant argues that Bernatowicz has not shown that the price decreases Plaintiff suffered were the but-for result of the infringement. (Bernatowicz Mot. 22.)

#### *2.4.1 Price Erosion—Elasticity of Demand*

Defendant argues that Bernatowicz failed to analyze elasticity of demand, contrary to the Federal Circuit's holding that "in a credible economic analysis, the patentee cannot show entitlement to a higher price divorced from the effect of the higher price on demand for the product."  (Bernatowicz Mot. 23 (citing *Crystal Semiconductor Corp. v. Tritech*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 12-00329 AG (JPRx) | Date | April 21, 2014 |
|----------|-------------------------|------|----------------|

| Title | UNIVERSAL ELECTRONICS, INC. v. UNIVERSAL REMOTE CONTROL, INC. |
|-------|---------------------------------------------------------------|

*Microelectronics Int'l*, 246 F.3d 1336, 1357 (Fed. Cir. 2001)).)  Defendant argues that its own expert calculated the elasticity of demand for Plaintiff's Atlas remote, which is sold to Time Warner, to be 10.1, meaning that a 1% price increase would lead to a 10% decrease in sales.  (Bernatowicz Mot. 23.)

But Defendant's expert's analysis of demand elasticity does not include a discussion of statistical significance, and at first glance, the variance of the elasticity presented in his Tab 29 is striking. (Rowland Decl. Ex. 165 320-322.)  The elasticities are presented quarterly.  The first eight are: 5,560.2, -14.7, -8.2, 99.2, -80.7, 9.6, -1.5, and 1,260.5.  (Rowland Decl. Ex. 165 322.)  The Court reaches no conclusions here on Defendant's expert's demand analysis, other than it is insufficiently convincing to warrant exclusion of the opposing expert's opinion.

More importantly, Plaintiff argues that Time Warner had particular purchasing requirements that make a typical demand elasticity analysis inapposite.  (Bernatowicz Opp'n 23.)  Bernatowicz provided an opinion in his report that Plaintiff would have made all the sales contemplated by the 2010 Time Warner auction.  (Bernatowicz Rep., Ex. 150 69-71.)  Whether that is true is a factual question.

### 2.4.2   *Price Erosion—Plaintiff's Licensing Practices*, *Decreasing Costs, Competition, and Time Warner's Reverse Pricing Auction Mechanism*

Defendant raises four other price erosion issues that it believes Bernatowicz considered insufficiently: Plaintiff's licensing to other competitors, the drop in prices before Defendant's significant competition, the effect of other competition, and Time Warner's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 12-00329 AG (JPRx) | Date | April 21, 2014 |
|---|---|---|---|
| Title | UNIVERSAL ELECTRONICS, INC. v. UNIVERSAL REMOTE CONTROL, INC. | | |

adoption of a reverse auction pricing mechanism.  (Bernatowicz Mot. 23-25.)  These arguments raised are appropriate for cross-examination, but do not justify exclusion of the testimony.

### 2.4.3   Price Erosion—Conclusion

The Bernatowicz Motion is **DENIED** as to price erosion.


**DISPOSITION**

The Motions are GRANTED IN PART and DENIED in PART.

|  | : | 0 |
|---|---|---|

| **Initials of Preparer** | **lmb** |
|---|---|