UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | SACV 12-00329 AG (JPRx) | Date | December 16, 2014 |
|---|---|---|---|
| Title | UNIVERSAL ELECTRONICS, INC. v. UNIVERSAL REMOTE CONTROL, INC. | | |

| Present: The Honorable | ANDREW J. GUILFORD | | |
|---|---|---|---|
| Lisa Bredahl | Not Present | | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. | |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: | |

**Proceedings:** **[IN CHAMBERS] FINDINGS OF FACT AND CONCLUSIONS OF LAW ON EQUITABLE ISSUES**

## INTRODUCTION

After a jury trial, the parties filed briefs concerning the resolution of Defendant's equitable defenses. (Dkt. Nos. 413, 414, 415, and 424.) The parties dispute not only the substance of those issues, but also whether they were submitted to the jury for final decision or an advisory verdict.

The Court heard the trial and knows what happened. Throughout the trial, numerous references were made concerning the Court being a "partial trier of fact," and the Court itself made this exact statement. No objection was made, and this was the common understanding. The jury's verdict on the equitable issues was advisory. The Court holds that Plaintiff's claim for infringement of the '426 Patent is barred by laches, but not by equitable estoppel or patent misuse. The Court holds that neither parties' claims or defenses are barred by unclean hands.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | SACV 12-00329 AG (JPRx) | Date | December 16, 2014 |
|---|---|---|---|
| Title | UNIVERSAL ELECTRONICS, INC. v. UNIVERSAL REMOTE CONTROL, INC. | | |

**ANALYSIS**

1.   **THE JURY'S VERDICT ON THE EQUITABLE DEFENSES**

   **1.1   Legal Standard**

Equitable issues are tried by the Court, with or without an advisory jury, unless the parties consent, and the Court agrees, to the jury finally deciding the equitable issues:

>  (c) Advisory Jury; Jury Trial by Consent. In an action not triable of right by a jury, the court, on motion or on its own:
>
>  > (1) may try any issue with an advisory jury; or
>  >
>  > (2) may, with the parties' consent, try any issue by a jury whose verdict has the same effect as if a jury trial had been a matter of right, unless the action is against the United States and a federal statute provides for a nonjury trial.

Fed. R. Civ. P. 39.

> In an action tried on the facts without a jury or with an advisory jury, the court must find the facts specially and state its conclusions of law separately. The findings and conclusions may be stated on the record after the close of the evidence or may appear in an opinion or a memorandum of decision filed by the court.

Fed. R. Civ. P. 52(a)(1).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 12-00329 AG (JPRx) | Date | December 16, 2014 |
|---|---|---|---|
| Title | UNIVERSAL ELECTRONICS, INC. v. UNIVERSAL REMOTE CONTROL, INC. | | |

**1.2    Application**

Defendant argues that the equitable issues were submitted to the jury for binding decision. Defendant relies on the parties' demand for a jury trial in their pleadings and the Court's setting a jury trial in the Rule 16 scheduling order. (Def.'s Opening Br., Dkt. No. 414 at 2.) That argument ignores Fed. R. Civ. P 39(a), which provides:

> When a jury trial has been demanded under Rule 38, the action must be designated on the docket as a jury action. The trial on all issues so demanded must be by jury unless:
>
> (1) the parties or their attorneys file a stipulation to a nonjury trial or so stipulate on the record; or
>
> (2) the court, on motion or on its own, finds that on some or all of those issues there is no federal right to a jury trial.

Thus, even if the parties had demanded a jury trial on the equitable issues, the Court would have found that there was no federal right to a jury trial on them. And, as Plaintiff points out, the parties' pleadings only called for a jury for all issues "so triable" or "properly tried to a jury." (Pl.'s Reply, Dkt. No. 415 at 2.) Further, the scheduling order cited by Defendant was merely noting that at least a portion of the case would require a jury.

Defendant relies on *Modine Mfg. Co. v. Allen Group, Inc.*, 917 F.2d 538 (Fed. Cir. 1990), where the losing party to an inequitable conduct jury verdict argued that the issue should not have gone to the jury. In holding that the issue had been properly submitted to the jury for decision, the Federal Circuit held: "We simply do not believe the three earlier instances in which Allen claims to have made the trial court generally aware of its position constituted the sort of pattern of specific objection throughout the course of the trial, including the jury instruction phase, that was present in [prior cases finding no waiver]." *Id.* at 542. And when it was before the trial court, the losing party in *Modine* "did initially object to the jury determining the ultimate legal conclusion of inequitable conduct, [but later] conceded that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 12-00329 AG (JPRx) | Date | December 16, 2014 |
|---|---|---|---|
| Title | UNIVERSAL ELECTRONICS, INC. v. UNIVERSAL REMOTE CONTROL, INC. | | |

the factual underpinnings must be decided by the jury." *Modine Mfg. Co. v. Allen Grp., Inc.*, C-85-6946-DLJ, 1989 WL 205782 at *7 (N.D. Cal. Nov. 30, 1989) *aff'd*, 917 F.2d 538 (Fed. Cir. 1990).

*Modine* does not govern the very different circumstances of this case. Defendant points to the proposed final pretrial order in which Plaintiff asked the Court to bifurcate the equitable issues, while Defendant's preference was for a unified trial. (Def.'s Op. Br. 3.) In denying the request for bifurcation, the Court stated : "the papers kind of look like [Plaintiff was] using bifurcation to grab an extra four days for our eight-day trial. Bifurcation will not be a vehicle to extend the eight days." (April 21, 2014 Motion Hearing Tr. 22:19-23.) Thus, the Court did not state that the jury would decide all issues, and Plaintiff clearly opposed the jury doing so.

Context here is important: all of the equitable issues were potential negatives for the Plaintiff. There was no possible upside for the Plaintiff in having the jury hear the relevant facts, which related to accusations of unclean hands and the like. Defendant's portion of the proposed pretrial order opposing bifurcation stated:

> Although URC does not disagree that the defense is equitable in nature, UEI's argument overlooks the fact that issues related to UEI's unclean hands defense are also part of URC's counterclaim for invalidity of the '426 patent. For example, the evidence concerning UEI's troubling ten year delay in petitioning to correct inventorship relates to both patent invalidity and to UEI's unclean hands in bringing this suit. This evidence is properly heard **first** by the jury. *See Beacon Theat[re]s, Inc. v. Westover*, 359 U.S. 500, 508 (1959). **The Court may in its discretion seek an advisory verdict from the jury after the evidence of unclean hands is presented**.

(Proposed Final Pretrial Conference Order, Dkt. 309-1 16 (emphasis added).) As Defendant notes, the Court could not decide to treat a jury's verdict as advisory if the issue had been submitted to the jury for final determination. So Defendant could not have been proposing that the Court could decide mid-trial to take the issue away from the jury and change the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 12-00329 AG (JPRx) | Date | December 16, 2014 |
|---|---|---|---|
| Title | UNIVERSAL ELECTRONICS, INC. v. UNIVERSAL REMOTE CONTROL, INC. | | |

jury's role to an advisory one. Instead, Defendant's submission conveyed that the equitable issue was for the Court to decide, but if the Court wanted the jury's advice, it could ask for it.

Another difference between this case and *Modine* is that there, the Court intended to submit the issue to the jury for final decision. *Modine Mfg. Co.,* 1989 WL 205782 at *7. Here, the Court did not. Instead, the Court intended to, and did, exercise its discretion to retain equitable issues for its own determination.

> Rule 39(c) provides that the court, "with the consent of both parties, *may* order a trial with a jury whose verdict has the same effect as if trial by jury had been a matter of right." Fed.R.Civ.P. 39(c) (emphasis added). Thus, when both parties consent, Rule 39(c) invests the trial court with the discretion—but not the duty—to submit an equitable claim to the jury for a binding verdict. While the litigants are free to request a jury trial on an equitable claim, they cannot impose such a trial on an unwilling court.

*Merex A.G. v. Fairchild Weston Sys., Inc.*, 29 F.3d 821, 827 (2d Cir. 1994). The Court here did not exercise its discretion to submit the equitable claim to the jury for a binding verdict. Instead, very significantly, the Court, during the trial, reminded the parties that they were "partly trying this case to this Court" and referred to the Court both "as a partial trial of fact" and "the trier of fact [on some issues]." (Tr. 390:13-391:10, 400:23-24.)

Another case Defendant relies upon, *Duhn Oil Tool, Inc. v. Cooper Cameron Corp.*, 818 F. Supp. 2d 1193 (E.D. Cal. 2011), also does not support its position. There, the parties previously waived a jury on certain **legal** claims, but before trial the Court ordered that all legal claims would be tried to the jury, and the jury would be advisory on other issues. In confirming its understanding of the pretrial order, the Court noted that the "parties' course of conduct establish its meaning beyond the shadow of a doubt." *Id.* at 1207.

Here too, the parties' conduct clearly establishes that everyone understood that the jury would be advisory on the equitable issues. At the close of the trial, the Court, very significantly, stated: "I need to sort out what the equitable issues are that we've occasionally

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 12-00329 AG (JPRx) | Date | December 16, 2014 |
|---|---|---|---|
| Title | UNIVERSAL ELECTRONICS, INC. v. UNIVERSAL REMOTE CONTROL, INC. | | |

talked about. In light of this verdict, to the extent there were equitable issues, we all know those were advisory." (Tr. 2040:12-18.) The Court then ordered the parties to confer regarding post-trial motions, including on the advisory equitable issues in the verdict. (Tr. 2040:12-18.) Defendant made no objection at that time.

The parties then filed a stipulation, quoting those statements from the Court and proposing "that the Court reserve entry of judgment on all issues until the parties have briefed which issues were equitable and if so how the Court should resolve those issues." (Dkt. 398 2.) There is no hint in that stipulation, filed a week after trial, that Defendant had by then even conceived of the argument that the jury verdict on the equitable issues was binding. Defendant says that it "edited the post-trial stipulation to remove all references to findings of fact under Rule 52(a)(1) so that the stipulation would be 'neutral' on whether the verdict was binding or merely advisory . . . ." (Def.'s Reply 4.) But the email from Defendant's counsel accompanying the revision stated: "I changed the language to make it neutral about which issues may or may not be equitable." (Def.'s Reply Ex. BB.) This is consistent with the redline Defendant's counsel sent, which struck the identification of "patent misuse, laches, equitable estoppel, res judicata, and unclean hands" as the equitable issues and replaced it with language stating that the briefs would address "which issues were equitable." (Def.'s Reply Ex. CC.)

Surely, if Defendant had the argument it now urges in mind, it would have clearly raised it in response to the Court's remarks, or at the very latest, in drafting the stipulation. Defendant's reputable counsel would not have deliberately attempted to sandbag Plaintiff, who, consistent with the Court's understanding, devoted its brief (the first in the agreed schedule) to the substantive issues, with zero discussion of the issue of whether the jury's verdict was advisory. This course of conduct further reinforces the Court's conclusion that all parties understood at the time of trial that the jury's verdict on equitable issues was advisory.

The most powerful evidence pointing in the opposite direction is Plaintiff's filing of a Rule 50(a) Motion during trial that addressed misuse and unclean hands. (Dkt. No. 389.) The Court does not view the filing of the Rule 50(a) Motion in the middle of an active trial as an indication of Plaintiff's view on whether the jury's verdict was advisory. Further, Plaintiff

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 12-00329 AG (JPRx) | Date | December 16, 2014 |
|---|---|---|---|
| Title | UNIVERSAL ELECTRONICS, INC. v. UNIVERSAL REMOTE CONTROL, INC. | | |

has represented to the Court that it always contemplated that equitable arguments would be made after the jury was dismissed. (Tr. of Hr'g re Equitable Issues, Dkt. 428 32:8-11.) And Defendant "thought that [Plaintiff was] going to seek bifurcation during the trial." (Tr. of Hr'g re Equitable Issues, Dkt. 428 33:1-9.) While Plaintiff did not seek formal bifurcation, such bifurcation would only have governed how the evidence would be presented, not who would make the decision. Bifurcation was understood to mean presenting evidence on equitable issues outside the jury's presence. That is consistent with the Court's understanding at the outset of trial that the equitable issues were not going to be submitted to the jury for binding decision. Thus, while the issue could have been clarified by the parties, the Court is satisfied that the parties "kn[e]w at the outset of the trial whether the decision will be made by the judge or the jury." *Pradier v. Elespuru*, 641 F.2d 808, 811 (9th Cir. 1981).

The Court will therefore decide the equitable issues under Fed. R. Civ. P. 52(a)(1), and issues findings of fact and conclusions of law in Sections 2 and 3. Conclusions of law in Section 2, Findings of Fact, are included in the Court's conclusions of law, and findings of fact in Section 3, Conclusions of Law, are included in the Court's findings of fact.

**2.    FINDINGS OF FACT**

United States Patent No. 5,414,426 ("'426 Patent") issued on May 9, 1995. ('426 Patent, Title Page). Plaintiff was the original assignee. (*Id.*) United States Patent No. 6,587,067 ("'067 Patent") issued on July 1, 2003. ('067 Patent, Title Page.) Plaintiff was the original assignee. (*Id.*) During the prosecution of the '426 Patent, Paul Darbee was not named as an inventor, and the Patent Office specifically stated: "Paul Darbee is not one of the inventors for this application." (Ex. 2 at UEI000065, 71.)

Defendant began selling its MX-500 remote in March 2001 and continued to sell it for over 10 years. (Tr. 1591:25-1592:6.) Over time, Defendant added more brands to the code library in the MX-500, but did not change the functionality of the device. (Tr. 1641:20-1642:15, 1589:18-21.) At a deposition not made part of the trial record, Defendant's CEO, Park, testified that the rotating favorite channel macro—pressing a button multiple times to cycle through favorite channels, rather than having separate buttons for favorite channels—was

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 12-00329 AG (JPRx) | Date | December 16, 2014 |
|---|---|---|---|
| Title | UNIVERSAL ELECTRONICS, INC. v. UNIVERSAL REMOTE CONTROL, INC. | | |

first introduced in 2007. (Decl. of Brian Haan in Supp. of Pl.'s Opp'n to Def.'s Mot. for Summ. J., Dkt. No. 176, Ex. 10 454:19-456:19.) Because this testimony was not admitted at trial, the Court does not include it in its findings of fact.

In a prior case between the parties that Plaintiff filed on November 15, 2000 ("the prior case"), Plaintiff initially asserted the '426 Patent. (Ex. 178, ¶ 8.) In response, Defendant asserted that prior art invalidated the '426 Patent. (Ex. 1094 at URCI005380-81.) Plaintiff replied that it could add Darbee as an inventor to the '426 Patent, and in so doing, claim entitlement to a priority date before the relevant prior art. (Ex. 1095 at URCI005385.) But instead of adding Darbee as an inventor, Plaintiff dismissed all claims under the '426 Patent with prejudice, and did not include the '426 Patent when it filed its First Amended Complaint in the prior case on October 18, 2002. (Exs. 1089, 1090 at 3.)

Plaintiff was aware of the MX-500 product at the time of the prior case. (Tr. 541:6-10.) Indeed, Plaintiff accused the MX-500 product in its First Amended Complaint in the prior case, but had dropped the '426 Patent from the case at that time. (Ex. 1090.) In short, Plaintiff could have, but did not, accuse the MX-500 product of infringing the '426 Patent in the prior case. (Ex. 178, Tr. 1574:6-24.)

As a prelude to this case, Plaintiff sent letters to Defendant in 2010 and 2011 accusing it of infringement and inviting it to negotiate a resolution. (Exs. 561, 562.) Four weeks before Plaintiff filed this case, Plaintiff's Senior Vice-President, Lou Hughes, sent an email stating: "I NEED URC to be sued before this Time Warner RFQ comes out. If this does not happen then there is little value in it for us directly. We have about three to four weeks now to get this done MAX." (Ex. 1333.)

Plaintiff filed this case on March 2, 2012, asserting, among other patents and claims, claims 1, 2, 3, 4, 10, and 13 of the '426 Patent. (Ex. 90, ¶ 17.) Despite the lawsuit, Time Warner gave increased business to Defendant, not Plaintiff. (Tr. 139:5-13, 964:14-965:12.) On October 4, 2012, Plaintiff's Vice-President of Subscription Broadcast Sales, Steve Gutman, sent an email to Hughes about "sticking it to URC" and hoping that Defendant losing an account would "kill them." (Ex. 1358.) Hughes responded "AWESOME! We are going to get VERY

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 12-00329 AG (JPRx) | Date | December 16, 2014 |
|---|---|---|---|
| Title | UNIVERSAL ELECTRONICS, INC. v. UNIVERSAL REMOTE CONTROL, INC. | | |

aggressive on this quote [to another of Defendant's customers]. We are going to push URC's margin and price DOWN. That along with the current lawsuit should push them to the brink. This will be payback for Time Warner." (Ex. 1358.)

On July 3, 2012, after Plaintiff filed this case, Plaintiff petitioned the PTO to add Darbee as an inventor. (Ex. 21.) Neither Pat Hayes, who submitted the petition on behalf of Plaintiff, nor named inventor Kim Nguyen, who signed the petition, had any recollection as to what Darbee's inventive contribution was to the '426 Patent. The videotaped and live testimony of these two witnesses was damning. When testifying on this point, they appeared nervous or combative, and neither could provide any cogent explanation for the 10-year delay in seeking correction of inventorship. They had credibility issues.

On June 12, 2013, fifteen months into this lawsuit, Plaintiff accused the MX-500 of infringing all asserted claims of the '426 and '067 Patents. (Ex. 604 at 8:3-6, Tr. 1588:19-1589:17.) About three months later, on September 5, 2013, Plaintiff dropped its claim of infringement against the MX-500 product and any assertion of claim 1 of the '426 Patent. (Ex. 624 4.) Defendant did not show that the MX-500 product is essentially the same as the other remote controls accused of infringing '426 Patent claims 2 and 3.

No evidence was presented that Defendant would have changed its activity had Plaintiff sued it earlier. Defendant's CEO, Park, testified that Defendant stayed in the cable remote control business because its business partner, Ohsung Electronics, built a factory in Mexico to support Defendant's operation, so Park felt obligated to keep that factory running. (Tr. 1625:11-1626:25.) Defendant viewed the cable remote controls that are the subject of this litigation as commodity products that have remained static for the last 20 years, so Defendant has done very little, if any, research and development in that product category. (Tr. 701:7-702:4.)

No evidence was presented that this lawsuit has harmed Defendant in the marketplace. Nor was any there any proof of evidentiary prejudice. Defendant complains that "it is very difficult and time consuming to present admissible evidence from so long ago" (Def.'s Op. Br. 17), but Defendant put invalidating prior art before the jury.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | SACV 12-00329 AG (JPRx) | Date | December 16, 2014 |
|---|---|---|---|
| Title | UNIVERSAL ELECTRONICS, INC. v. UNIVERSAL REMOTE CONTROL, INC. | | |

The parties' remote controls come pre-programmed with codes for controlling audiovisual appliances from multiple manufacturers. Defendant copied Plaintiff's list of codes, incorporating the false company names that Plaintiff includes in its code lists to detect such copying. (Tr. 479:3-183:13.)

## 3. CONCLUSIONS OF LAW

Of the equitable theories to be decided by the Court, all but unclean hands relate solely to the '426 Patent. The parties also discuss whether laches bars Plaintiff's assertion of the '067 Patent, but neither infringement nor validity of the '067 patent were addressed at trial, so the issue was moot, and no advisory question was put to the jury about laches for the '067 Patent.

The Court granted summary judgment before trial that Defendant did not infringe the '426 Patent. (Order on Defendant's Motion for Summ. J., Dkt. No. 222 29-31.) At trial, the jury decided that the '426 Patent was invalid for improper inventorship. (Verdict Form, Dkt. No. 408, Question No. 9.)

In ruling on the parties' proposed jury instructions, the Court decided the law governing these questions. Defendant expressly agrees, and Plaintiff does not dispute, that the jury instructions are law of the case. (Def.'s Opening Br. 10-11.)

### 3.1 Laches - '426 Patent

Final Jury Instruction No. 37 provided that to establish laches:

> URC must prove delay and prejudice by a preponderance of the evidence. . . . If suit was delayed for six years, a rebuttable presumption arises that the delay was unreasonable and unjustified, and that material prejudice resulted.

***

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | SACV 12-00329 AG (JPRx) | Date | December 16, 2014 |
|---|---|---|---|
| Title | UNIVERSAL ELECTRONICS, INC. v. UNIVERSAL REMOTE CONTROL, INC. | | |

> Prejudice to URC can be evidentiary or economic. Whether URC suffered evidentiary prejudice is a question that must be answered by evaluating whether delay in filing this case resulted in URC not being able to present a full and fair defense on the merits to UEI's infringement claim. . . . Economic prejudice is determined by whether or not URC changed its economic position in a significant way during the period of delay resulting in losses beyond merely paying for infringement (such as if URC could have switched to a noninfringing product if sued earlier), and also whether URC's losses as a result of that change in economic position likely would have been avoided if UEI had filed this lawsuit sooner.

(Dkt. No. 410 41-42.)  The jury's advisory verdict was that Defendant proved by a preponderance of the evidence that Plaintiff's claim for infringement of the '426 Patent is barred by laches.  (Verdict Form, Dkt. No. 408, Question No. 11.)  Neither party ever proposed that the question should be asked on a product-by-product or claim-by-claim basis.

Plaintiff accused the MX-500 product in the prior case.  It did not assert the '426 Patent against the MX-500 in the prior case, but it could have.  And Defendant's CEO, Park, testified at trial that the functionality of the MX-500 did not change between the prior case and this case.  Plaintiff now cites evidence that the product did, in fact, change in the intervening period, but again, Plaintiff did not introduce that evidence at trial.

Therefore, "suit was delayed for six years," so "a rebuttable presumption arises that the delay was unreasonable and unjustified, and that material prejudice resulted."  (Dkt. No. 410, Jury Instruction No. 37.)  Plaintiff did not rebut those presumptions at trial.  First, Plaintiff did not justify its delay.  Second, plaintiff did not rebut the presumption of prejudice.  Consistent with Jury Instruction No. 37,

> [e]conomic prejudice may arise where a defendant and possibly others will suffer the loss of monetary investments or incur damages which likely would have been prevented by earlier suit.  Such damages or monetary losses are not merely those attributable to a finding of liability for infringement.  Economic

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | SACV 12-00329 AG (JPRx) | Date | December 16, 2014 |
|---|---|---|---|
| Title | UNIVERSAL ELECTRONICS, INC. v. UNIVERSAL REMOTE CONTROL, INC. | | |

> prejudice would then arise in every suit.  The courts must look for a change in the economic position of the alleged infringer during the period of delay.  On the other hand, this does not mean that a patentee may intentionally lie silently in wait watching damages escalate . . . particularly where an infringer, if he had had notice, could have switched to a noninfringing product.  Indeed, economic prejudice is not a simple concept but rather is likely to be a slippery issue to resolve.

*A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020, 1033 (Fed. Cir. 1992) (citations omitted).

Here, economic prejudice is indeed "a slippery issue to resolve."  As discussed further in Section 3.2, the evidence at trial showed that Defendant would not necessarily have done anything differently if sued earlier.  But it could have switched to a noninfringing product.  And the long delay here raises the concern that Plaintiff "intentionally l[ay] sliently in wait watching damages escalate."  *Id.*

Given the slippery standard and the lackluster facts, the best the Court can say is that Plaintiff did not rebut the presumption of material prejudice.  Plaintiff certainly did not prove that anything would have stopped Defendant from switching to a noninfringing product.

The Court therefore holds that laches bars Plaintiff's enforcement of the '426 Patent.

### 3.2    Equitable Estoppel - '426 Patent

Final Jury Instruction No. 38 provided that equitable estoppel applies when:

> (1) the patent holder communicates something in a misleading way to the infringing party about the lack of infringement or about not being sued, (2) the infringer relies upon the misleading communication from the patent holder, and (3) the infringer will be materially harmed if the patent holder is allowed to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | SACV 12-00329 AG (JPRx) | Date | December 16, 2014 |
|---|---|---|---|
| Title | UNIVERSAL ELECTRONICS, INC. v. UNIVERSAL REMOTE CONTROL, INC. | | |

> assert a claim relating to the issue that is inconsistent with the patent holder's prior misleading communication.

(Dkt. No. 410 43.) The jury's advisory verdict was that Defendant proved by a preponderance of the evidence that Plaintiff's claim for infringement of the '426 Patent is barred by equitable estoppel. (Verdict Form, Dkt. 408, Question 12.)

The first and third prongs are met, but the second, reliance, is not. Reliance "is not a requirement of laches but is essential to equitable estoppel." *A.C. Aukerman*, 960 F.2d at 1042. Defendant notes the Court's previous finding that "the only possible inference is that Defendant was led to reasonably believe that Plaintiff did not intend to assert the '426 Patent." (Def.'s Opening Br. 17 (quoting Order on Defendant's Mot. for Summ. J., Dkt No. 222 12).) Defendant then argues: "[t]hat satisfies the first two prongs of equitable estoppel (misleading communication and reliance)." (Def.'s Opening Br. 17-18.)

But as made clear in the Court's summary judgment ruling, the fact that the only possible inference from an action is an intent not to assert a patent only addresses the first prong. (Order on Defendant's Mot. for Summ. J., Dkt No. 222 10-11.) Further, the "only possible inference" standard is only relevant to summary judgment. (*Id.*) So, Defendant needed to prove reliance. "Another significant difference from laches is that no presumption adheres to an equitable estoppel defense. Despite a six-year delay in suit being filed, a defendant must prove all of the factual elements of estoppel on which the discretionary power of the court rests." *A.C. Aukerman*, 960 F.2d at 1043.

The evidence at trial did not show that Defendant relied on Plaintiff's communicated intent to not assert the '426 Patent. There was no evidence presented of specific design alternatives that were foregone or any specific investment undertaken in reliance on Defendant's belief that the '426 Patent would not be asserted.

Defendant was not investing in research and development for commodity cable remote controls because it did not believe such investment was commercially beneficial. And Defendant continued in the low-margin commodity cable business instead of focusing on its

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | SACV 12-00329 AG (JPRx) | Date | December 16, 2014 |
|---|---|---|---|
| Title | UNIVERSAL ELECTRONICS, INC. v. UNIVERSAL REMOTE CONTROL, INC. | | |

preferred high-end business because it felt obligated to Ohsung, which built a factory in Mexico to meet Defendant's needs.

Defendant offers hypotheticals about what it might have done had Plaintiff sued earlier. (Def.'s Op. Br. 16.) It could have omitted accused features. It could have invalidated the patents earlier, "minimizing URC's exposure and cost of litigation." But Defendant did not show that it omitted any '426 Patent accused features after Plaintiff's 2010 and 2011 letters. And despite the eagerness Defendant now professes for invalidating the patent, it did not initiate a declaratory judgment suit in response to those letters. Instead, it kept doing what it was doing commercially, and took no legal action. In sum, Defendant has not shown reliance.

Therefore, the Court holds that equitable estoppel does not prevent the assertion of the '426 Patent.

### 3.3 Patent Misuse - '426 Patent

Final Jury Instruction No. 36 provided that to prove patent misuse, Defendant needed to show that:

> UEI brought objectively baseless claims of infringement for the '426 patent against URC in bad faith and for an improper purpose. A purpose is improper if its goal is not to win a favorable judgment, but to harass a competitor and deter others from competition by engaging the litigation process itself. You must presume that UEI's infringement suit was filed in good faith, and URC may only rebut that presumption with clear and convincing evidence.

(Dkt. No. 410 39.) The jury's advisory verdict was that Defendant proved by clear and convincing evidence that Plaintiff is barred from enforcing the '426 Patent against Defendant for patent misuse. (Verdict Form, Dkt. No. 408, Question 10.)

Evidence at trial showed that this suit was motivated at least in part by a desire to harm

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | SACV 12-00329 AG (JPRx) | Date | December 16, 2014 |
|---|---|---|---|
| Title | UNIVERSAL ELECTRONICS, INC. v. UNIVERSAL REMOTE CONTROL, INC. | | |

Defendant, a successful market competitor. But Defendant needs to show how the intended harm went beyond the consequences of the patent law's grant of an exclusive right. That is, patents are supposed to convey a competitive advantage, but they are not self-executing. Patentees often need to litigate to obtain the benefit of the patent grant. Generalized "'wrongful' enforcement of patents, is activity protected under [*E. R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961)] and [*California Motor Transp. Co. v. Trucking Unltd.*, 404 U.S. 508 (1972)], and is not subject to collateral attack as a new ground of 'misuse.'" *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1373 (Fed. Cir. 1998). "It is not patent misuse to bring suit to enforce patent rights not fraudulently obtained, nor is otherwise legal competition such behavior as to warrant creation of a new class of prohibited commercial conduct when patents are involved." *Id.*

Defendant argues that of the four patents Plaintiff asserted in this case, "three were so weak that they were disposed of before trial," and a jury returned a defense verdict on all aspects of the fourth. (Def.'s Op. Br. 22.) Defendant believes that "[t]he most reasonable conclusion given the weakness of the patents asserted is that UEI's goal was not to win a favorable judgement, but simply to drive up URC's costs by subjecting URC to expensive litigation." (*Id.*) This case involved a host of complex issues. While Plaintiff's case was not strong, and likely suffered in many ways from Plaintiff's delay in bringing it, the Court did not see sufficient indicia of bad faith. The Court does not find that Plaintiff believed that it was asserting patents that were invalid, non-infringed, or unenforceable.

And as to res judicata, the jury instruction stated that "the plaintiff is barred from accusing of infringement in the second lawsuit any product that is essentially the same as a product that was accused of infringing the same patent in the first lawsuit." (Dkt. No. 410, Jury Instruction No. 39.) Defendant argues: "[t]hat is exactly what UEI did when it filed this lawsuit accusing the MX-500 of infringing the '426 patent for a second time." (Def.'s Op. Br. 19.) This ignores that in the prior case, Plaintiff dropped its claim for infringement of the '426 Patent before accusing the MX-500 of infringing any patents.

Lastly, while the jury found the '426 Patent invalid for improper inventorship, Defendant did not establish that Plaintiff knew that the patent was invalid, and so has not established that its assertion of the patent was in bad faith on that ground.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | SACV 12-00329 AG (JPRx) | Date | December 16, 2014 |
|---|---|---|---|
| Title | UNIVERSAL ELECTRONICS, INC. v. UNIVERSAL REMOTE CONTROL, INC. | | |

The Court therefore holds that Plaintiff's assertion of the '426 Patent is not barred by patent misuse.

### 3.4     Plaintiff's Unclean Hands - All Patents

Final Jury Instruction No. 40 provided, in part:

> The owner of a patent may be barred from enforcing the patent against an infringer where the owner of the patent acts or acted inequitably, unfairly, or deceitfully towards the infringer or the Court in a way that has immediate and necessary relation to the relief that the patent holder seeks in a lawsuit.

(Dkt. No. 410 46.)  The jury's advisory verdict was that Defendant proved by a preponderance of the evidence that Plaintiff is barred from obtaining relief due to unclean hands.  (Verdict Form, Dkt. 408, Question 13.)

The "defense of patent misuse arises from the equitable doctrine of unclean hands." *C.R. Bard*, 157 F.3d at 1372.  Accordingly, Defendant addressed both theories in a single section of its brief.  (Def.'s Op. Br. at 19-23.)  But Defendant argues that the "objectively baseless" requirement does not apply to unclean hands.  (Def.'s Reply Br. 9.)  And, as presented in the jury instructions, the defense of unclean hands is not limited to the '426 Patent, but instead could operate to bar relief on the other patents that were asserted before trial.

While the Court holds that laches applies to bar the assertion of the '426 Patent, Defendant has not provided authority for the proposition that unclean hands should be found whenever another equitable defense succeeds.  To the contrary, "[i]t is not [independently] 'unconscionable' for a plaintiff to continue to litigate a case, even if the defendant raises a defense that is later found to be meritorious." *Hoffman-La Roche, Inc. v. Promega Corp.*, 319 F. Supp. 2d 1011, 1025 (N.D. Cal. 2004).  Defendant repeatedly points to Plaintiff's intent to gain a competitive advantage from this lawsuit, but does not establish that Plaintiff acted deceitfully or unfairly.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 12-00329 AG (JPRx) | Date | December 16, 2014 |
|---|---|---|---|
| Title | UNIVERSAL ELECTRONICS, INC. v. UNIVERSAL REMOTE CONTROL, INC. | | |

The one action that stands out as questionable is Plaintiff's accusing the MX-500, and then withdrawing that accusation without ever providing an explanation, other than a suggestion that it was a mistake of some kind. But Plaintiff maintained that accusation for only about three months before withdrawing it. Plaintiff argues that "[e]ven if those allegations were erroneous, UEI voluntarily corrected its mistake and cured any potential misuse." (Pl.'s Op. Br. 16.) The Court does not here address whether Defendant should be made whole for its efforts during those three months to address that particular allegation of infringement. But that incident, taken together with the entire course of the litigation and the other grounds urged by Defendant, does not show unclean hands.

The Court therefore holds that Plaintiff's claims are not barred by unclean hands.

### 3.5    Defendant's Unclean Hands

In a new theory not presented to the jury for an advisory verdict, Plaintiff argues that Defendant should not benefit from any equitable defenses because Defendant itself has unclean hands. Plaintiff points to Defendant's copying of its code libraries, Defendant's misrepresentation that Plaintiff had accused the MX-500 product of infringing the '426 Patent in the prior case, and Defendant's use of its relationship with Ohsung as a sword and shield during discovery. (Pl.'s Op. Br. 22-23.)

None of these issues rise to the level of unclean hands. Plaintiff had mechanisms to address any perceived discovery misconduct before trial, and Defendant's ability to secure witnesses from Korea to testify at trial does not show that it had control of those witnesses, or other Ohsung employees. Defendant's mistake about whether the MX-500 was accused of infringing the '426 Patent in the prior litigation was one of many facts that both parties could have been more careful about throughout the course of the case. And if Plaintiff thought that Defendant's copying of Plaintiff's code libraries was independently wrongful, Plaintiff could have sued for it.

The Court therefore holds that Plaintiff has not shown that Defendant's unclean hands bar it from asserting equitable defenses.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | SACV 12-00329 AG (JPRx) | Date | December 16, 2014 |
|---|---|---|---|
| Title | UNIVERSAL ELECTRONICS, INC. v. UNIVERSAL REMOTE CONTROL, INC. | | |

## DISPOSITION

Plaintiff's assertion of the '426 Patent is barred by laches. Plaintiff's assertion of the '426 Patent is not barred by equitable estoppel or patent misuse. Plaintiff's right to relief is not barred by unclean hands. Defendant's equitable defenses are not barred by unclean hands.

|  | : | 0 |
|---|---|---|
| **Initials of Preparer** | lmb | |