

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNIVERSAL ELECTRONICS, INC., <br><br> Plaintiff, <br><br> v. <br><br> UNIVERSAL REMOTE CONTROL, INC. <br><br> Defendants. | CASE NO. SACV 12-00329 AG (JPRx) <br><br> **ORDER GRANTING DEFENDANT'S MOTION FOR ATTORNEYS' FEES, DKT. NO. 447** |

**INTRODUCTION**

Exceptional cases are, by definition, the exception. But since *Octane*'s change in the standard, the rule seems to be for prevailing parties to bring an exceptional case motion. This case is no exception. But it is exceptional.

Plaintiff Universal Electronics, Inc. ("UEI" or "Plaintiff") brought this patent infringement suit against its competitor, Defendant Universal Remote Control, Inc. ("URC" or Defendant"). After a jury trial on the legal issues and a concurrent bench trial on the equitable issues, the Court entered judgment in favor of Defendant. (Dkt. No. 453.) Defendant now moves for a determination that it is entitled to its attorneys' fees, with the dollar amount to be set after additional briefing (the "Motion"). (Dkt. No. 447.) Plaintiff opposes the Motion, arguing that this was a mine-run case. (Dkt. No. 463.)

The Court GRANTS the Motion.

**BACKGROUND**

This is not the first lawsuit between the parties. Plaintiff also sued Defendant on November 15, 2000 ("the prior case"). In the prior case, Plaintiff asserted, among others, U.S. Patent No. 5,414,426 ("'426 Patent"), and Defendant argued that prior art invalidated it. Plaintiff replied that it could add Paul Darbee as an inventor to the patent, entitling the patent to a priority date that predated the alleged prior art. (Trial Ex. 1095 at URCI005385.) But instead of doing so, Plaintiff dismissed its claim of infringement of the '426 Patent on October 18, 2002 with prejudice. (Miro Decl., Ex. 17, Dkt. No. 447-5 at 13-21.) In 2004, the parties entered into a settlement and license agreement ending the remainder of the prior case. (Haan Decl., Ex. 8, Sept. 12, 2013 Hayes Dep., Dkt. No. 176-1 at 7; URCI000303-310.)

On March 2, 2012, Plaintiff filed this suit, alleging infringement of the '426 Patent and of U.S. Patent Nos. 5,614, 906 ("'906 Patent"), 6,587,067 ("'067 Patent"), and 5,568,367 ("'367 Patent"). The '067 Patent had expired at the time of the Complaint, so only back damages were

at issue as to that patent.

On July 3, 2012, Plaintiff petitioned the United States Patent and Trademark Office ("PTO") to do what it had said it could do ten years earlier: add Darbee as an inventor in the '426 Patent. (Trial Ex. 21.) Plaintiff's petition was accompanied by signed declarations from Darbee and the three inventors who were named on the patent. (Finkelstein Decl., Ex. 5, Dkt. No. 463-7 at 109-119.) On July 31, 2013, the PTO granted Plaintiff's petition, adding Darbee as a named inventor of the '426 Patent. (Finkelstein Decl., Ex. 5, Dkt. No. 463-7 at 123.)

On February 1, 2013, the Court issued a Claim Construction Order that invalidated the only relevant claim in the '367 Patent, and later denied Plaintiff's motion for reconsideration of that issue. (Dkt. Nos. 60, 79.)

From February 6, 2013 through February 26, 2013, Defendant filed petitions for *inter partes* review of the '426, '906, and '067 Patents. Defendant then moved to stay the case pending *inter partes* review, but the Court denied that motion. (Dkt. Nos. 63, 78.) Later, the Patent Trial and Appeal Board ("PTAB") declined to institute *inter partes* review of the '906 Patent and '426 Patent, but instituted review of the '067 Patent. (Finkelstein Decl., Ex. 1, Dkt. No. 463-2 at 3-24; Decision Denying *Inter Partes* Review, IPR2013-00168, Patent 5,414,426 (Aug. 26, 2013); Decision Instituting *Inter Partes* Review, IPR2013-00127, Patent 6,587,067 (July 16, 2013)). In the *inter partes* review of the '067 Patent, the PTAB determined that claims 1-6 were unpatentable as obvious under 35 U.S.C. § 103. (Miro Decl., Ex. 25, Dkt. No. 447-6 at 314-37.)

In February 2014, the parties each moved for summary judgment on a variety of issues. (Dkt. Nos. 159, 161.) Most significantly, the Court granted summary judgment of non-infringement of the '426 Patent and that no damages were available for the '067 Patent due to Plaintiff's failure to comply with the marking requirement, but held that triable issues remained concerning the validity of the '426 Patent, infringement of the '906 Patent, and various defenses. (Dkt. Nos. 222, 223.)

The case proceeded to trial in May 2014, and on May 21, 2014, the jury returned a verdict in favor of Defendant. (Dkt. No. 408.) The Court resolved the equitable defenses after post-trial

briefing. (Dkt. No. 435.)

## LEGAL STANDARD

The Patent Act provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. In this context, "exceptional" retains its ordinary meaning of "'uncommon, rare, or not ordinary.'" *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014). Accordingly, "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id*. "Section 285 discourages certain 'exceptional' conduct by imposing the cost of bad decisions on the decision maker." *Cambrian Sci. Corp. v. Cox Commc'ns, Inc.*, __ F. Supp. 3d. __, No. SACV 11-01011 AG, 2015 WL 178417, *1 (C.D. Cal. Jan. 6, 2015).

District courts determine whether a case is "exceptional" on a case-by-case basis, "considering the totality of circumstances." *Id.* Fees may be awarded where "a party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless" exceptional. *Id.* at 1757. "A case presenting either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award." *Id.* A party must prove its entitlement to fees by a preponderance of the evidence. *Id.* at 1758.

"[A] patentee does not act in good faith if it raises an infringement claim in which 'no reasonable litigant could realistically expect success on the merits.'" *GP Indus. Inc. v. Eran Indus., Inc.*, 500 F.3d 1369, 1374 (Fed. Cir. 2007) (citation omitted). "For this reason, proper investigation is an important pre-requisite to filing an infringement claim . . . ." *JS Prods., Inc. v. Kabo Tool Co.*, No. 2:11–cv–01856 RCJ, 2014 WL 7336063, at *4 (D. Nev. Dec. 22, 2014).

In the companion case to *Octane Fitness*, the Supreme Court held that "[b]ecause § 285 commits the determination whether a case is 'exceptional' to the discretion of the district court, that decision is to be reviewed on appeal for abuse of discretion." *Highmark Inc. v. Allcare*

4

*Health Mgmt. Sys.*, 134 S. Ct. 1744, 1748 (2014). The abuse-of-discretion standard applies to "all aspects of a district court's § 285 determination." *Id.* at 1749.

Federal Rule of Civil Procedure Rule 54(d)(2)(C) provides that "[t]he court may decide issues of liability for fees before receiving submissions on the value of services."

**ANALYSIS**

The Court analyzes the substantive strength of Plaintiff's litigating position and Plaintiff's manner of litigating for each of the patents in suit. In reviewing the record, the Court is mindful that evidence at trial showed that this litigation was at least in part motivated by Plaintiff's desire for "payback" for Defendant's successful competition in the marketplace: "We are going to get VERY aggressive on this quote. We are going to push URC's margin and price DOWN. That along with the current lawsuit should push them to the brink. This will be payback for Time Warner." (Oct. 4, 2012 email from Plaintiff's Vice President in charge of U.S. cable remote sales, Trial Ex. 1358.)

**1.    THE '067 PATENT**

Patentees who make or sell products in the United States may notify the public that the product is patented by marking the product with the patent number. 35 U.S.C. § 287. If a patentee does not do so, the damages period does not start running until the patentee notifies the infringer of the infringement. *Id.* Compliance with the marking requirement is a question of fact, on which the patentee bears the burden of proof. *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1111 (Fed. Cir. 1996).

Here, the Court granted summary judgment that Plaintiff failed to comply with the marking requirement, so no pre-suit damages were available. (Dkt. No. 222 at 48, 50.) Because the '067 Patent was expired at the time of suit, no post-suit damages were available, either. (*Id.* at 49.)

1    Whether Plaintiff complied with the marking requirement was a fact uniquely within its
2 knowledge. *See* Sept. 5, 2013 Hr'g Tr., Dkt. No. 116 at 11:5-7 ("At the very least it seems to me
3 that you [Plaintiff] should be uniquely in control of information that would demonstrate the time
4 periods when you have marked certain products or not."). Defendant focuses most on Plaintiff's
5 resistance to discovery on the physical remote controls. Plaintiff acknowledges Judge
6 Rosenbluth's observation that Plaintiff's evidence lacked meaning absent quality control
7 documents showing the policies were followed. (Dkt. No. 116 at 100:25-101:17; 102:24-
8 103:19; 111:24-112:1.) And Plaintiff acknowledges that it "bore the burden of proving that it
9 had marked 'substantially all' of its products with the '067 patent number in order to be entitled
10 to any relief." (Opp'n 13.)

11    But Plaintiff argues that Defendant "could have let UEI's original, purportedly deficient,
12 discovery responses stand and moved for summary judgment on the basis of UEI's failure of
13 proof." (*Id.*) Plaintiff further attempts to shift the blame by stating that "[i]ndeed URC did
14 move on that basis, but it first chose to take on the additional expense of pressing UEI for as
15 much information as possible" causing Plaintiff to acquiesce to "unduly burdensome discovery."
16 (*Id.*) But Defendant was under no obligation to roll the dice on the evidence that was (1)
17 favorable to Plaintiff's position, but (2) might have been insufficient for Plaintiff to carry its
18 burden. Defendant instead properly uncovered, after much resistance from Plaintiff, affirmative
19 evidence that Plaintiff had not complied with the marking requirement.

20    This issue contributes to a finding that this is an exceptional case on both the strength and
21 manner prongs. Substantively, information regarding Plaintiff's marking policies, procedures,
22 and practices was uniquely in Plaintiff's possession, but Plaintiff either did not adequately
23 review this material before filing suit, or filed suit knowing that it had not complied with the
24 marking requirement. Plaintiff compounded this by engaging in gamesmanship that made it hard
25 to discover and prove the marking failure.

26    In October 2013, Plaintiff asserted that it did not maintain samples of the remotes covered
27 by the '067 Patent. (Opp'n 12-13; Miro Decl., Ex. 7, Oct. 31, 2013 Hayes Dep., Dkt. No. 447-4
28 at 736:16-25 ("Most of these probably do not exist anymore.").) Plaintiff produced illegible

photographs of the remotes. (Rowland Decl., Ex. 47, Dkt. No. 161-6 at 2-8.) Indeed, when the photographs were presented at a deposition, Plaintiff's own witness could not read the markings. (Miro Decl., Ex. 6, Sept. 12, 2013 Hayes Dep., Dkt. No. 447-4 at 681:13-683:12; 687:2-24.) Defendant had to drag the relevant facts out of Plaintiff in a series of discovery motions. (*Id*. 8-9; Motions to Compel, Dkt. Nos. 109-1, 128-1, 149-4; Stipulation re Motion to Compel, Dkt. No. 152.) Only in January 2014, after a motion to compel—later withdrawn based on a stipulated order—did Plaintiff produce better pictures and 50 samples of the remotes. (*Id*.; Dkt. No. 153.) In short, the remotes did exist, contrary to Plaintiff's prior representation. And they proved Defendant's point.

The substantive and procedural problems concerning the '067 Patent are particularly troublesome in this case because, due to the patent's expiration, there was no case at all on the '067 Patent absent compliance with the marking requirement. Therefore, in the light most favorable to Plaintiff, its failure to conduct an adequate pre-suit investigation of its own marking compliance resulted in all of the work in the case related to the '067 Patent being a waste of resources. This differs from the ordinary case where post-suit remedies are also available, and thus further contributes to the exceptional nature of this case.

**2. THE '426 PATENT**

  **2.1 Substantive Strength of Plaintiff's '426 Patent Infringement Claim**

    *2.1.1 Inventorship*

During Plaintiff's prosecution of the '426 Patent, the PTO notified Plaintiff on two separate occasions—January 19, 1993 and June 14, 1993—that, based on Plaintiff's application materials, Paul Darbee was not an inventor on the '426 Patent application. (Trial Ex. 2 at UEI000056-57, UEI000070-71; Mot. 14-15; Reply 13-14.) Thus, Plaintiff specifically submitted inventorship oaths from the named inventors, not including Darbee. (*Id*.; Dkt. No.

463-7 at 109-119.) Nearly 10 years later, during the prior case, Plaintiff suggested to Defendant that it could "correct" the inventorship of the '426 Patent to include Darbee and thereby claim an earlier priority date, thus avoiding certain prior art that Defendant had raised in the prior case. (Trial Ex. 1095 at URCI005385.) Yet, Plaintiff did not do so, and instead dismissed the '426 Patent from the prior case. (Miro Decl., Ex. 17, Dkt. No. 447-5 at 13-21.) Plaintiff waited another 10 years—20 years after the application—to file a petition with the PTO to correct inventorship. (Dkt. No. 463-7 at 109-119.) That was after Plaintiff filed this case.

The Court previously expressed concern regarding the "troubling ten-year delay between the time the inventorship issue was raised and Plaintiff's petition for correction," yet Plaintiff never offered a justification for the delay. (Dkt. No. 223 at 8.) Plaintiff now hazards that "the issue of correcting the inventorship of the '426 patent 'slipped through the cracks'" (Opp'n 8-9 (quoting Sept. 11, 2013 Hayes Dep., Dkt. No. 386 at 8)) and argues that "[i]nattention is not a flattering explanation of UEI's delay in correcting the inventorship of the '426 patent, but it is the only one supported by the record." (Opp'n 9.) It is not clear why Plaintiff believes that to be so. The record leaves open numerous explanations, some less benign than inattention.

Whatever the reason, twenty years of delay contributes to a finding that this case is exceptional, because it created—again, in the light most favorable to Plaintiff—a situation where Plaintiff could not provide any corroboration of Darbee's purported inventive contribution, either from Plaintiff's files, from Darbee, or from the named inventors. *See* Dkt. No. 435 at 9. ("The videotaped and live testimony of these two witnesses was damning. When testifying on this point, they appeared nervous or combative, and neither could provide any cogent explanation for the 10-year delay in seeking correction of inventorship. They had credibility issues.")

### 2.1.2  Laches

In patent cases, a presumption of laches arises where the patentee delayed in filing suit for more than six years after actual or constructive knowledge of the infringement. *A.C. Aukerman*

*Co. v. R.L. Chaides Const. Co.,* 960 F.2d 1020, 1035-36 (Fed. Cir. 1992) (en banc). Plaintiff asserted the '426 Patent against Defendant in 2000, but dismissed the '426 Patent with prejudice in 2002. (Dkt. No. 447-5 at 13-21.) Plaintiff then asserted the '426 Patent in this case, 12 years later.

At summary judgment, the Court held that "[w]hile the undisputed facts are not sufficient to grant summary judgment of laches, Plaintiff's assertion of its patent rights was not a model of diligence." (Dkt. No. 222 at 50.) But after hearing all of the evidence at trial, the Court held that Plaintiff had not justified its delay and that Plaintiff did not rebut the presumption of prejudice, and that laches thus blocked Plaintiff's claim. (Dkt. No. 435 at 11.)

Again, this situation was created by Plaintiff, and in spite of it, Plaintiff inflicted the cost of defending against a claim that Defendant infringed the '426 Patent.

### 2.2 Plaintiff's Litigation Conduct Involving The '426 Patent

#### 2.2.1 *Inventorship*

The problems with Plaintiff's conduct regarding the inventorship of the '426 Patent go beyond Plaintiff's tardiness in filing its petition with the PTO. Plaintiff filed the petition to correct inventorship on July 3, 2012, months into this litigation, but failed to disclose its petition at that time to the Court or to Defendant. (Finkelstein Decl., Ex. 5, Dkt. No. 463-7 at 109-119; Mot. 16; Reply 14.) Plaintiff then served its initial disclosures on July 17, 2012, and included the '426 Patent prosecution history—except the petition it had filed only two weeks earlier. (*Id.*; Reply 14-15 (citing Miro Decl, Ex. 9, Dkt. No. 447-4).) Plaintiff submitted a copy of the same prosecution history—without the petition—to the Court on December 19, 2012, and did not otherwise inform the Court of the petition. (Reply 15; Dkt. No. 50-1.) More inattention, perhaps?

It was not until Defendant petitioned for *inter partes* review in May 2013 that Defendant learned of Plaintiff's petition. (Brookey Decl., Ex. 3, Dkt. No. 88-1 at 71-72; Mot. 16; Reply

9

14-15.) Plaintiff also frustrated Defendant's inquiry into the inventorship issue. When Plaintiff filed its petition for correction in July 2012, Plaintiff represented through sworn declarations to the PTO that Darbee had contributed to the invention in the '426 Patent. (Finkelstein Decl., Ex. 5, Dkt. No. 463-7 at 109-119.) Yet, when responding to interrogatories and a motion to compel a year later, Plaintiff claimed it did not have specific information regarding Darbee's inventive contribution. (Hurley Decl., Ex. A, B, and E, Dkt. No. 109-2 at 5-10, 25-28, 56-59.) And, even at trial, Plaintiff did not provide any relevant information regarding Darbee's contribution to the invention. (Dkt. No. 435 at 9.) Plaintiff should have simply admitted earlier that it did not have information corroborating Darbee's purported inventive contribution.

Had Plaintiff admitted the deficiency earlier, the parties and the Court could have avoided several discovery disputes. For example, the original discovery deadline was August 30, 2013. Defendant discovered Plaintiff's inventorship correction petition in late May 2013, and did not receive Plaintiff's response to requests for production until July 8, 2013. (Dkt. No. 88 at 7-8; Brookey Decl., Ex. 4, Dkt. No. 88-1 at 74-110). Although the inventorship issue bore directly on Defendant's invalidity defense, Plaintiff opposed extension of the discovery deadline. (Dkt. No. 90.) The Court set a hearing on the issue (Dkt. No. 96) and ultimately extended the deadline under a stipulation. (Dkt. No. 105.)

Similarly, Defendant moved to compel further responses to inventorship interrogatories. (Dkt. No. 109.) Plaintiff supplemented its interrogatory responses, but Plaintiff claimed it could not provide more detailed responses because Darbee and the other inventors were not within Plaintiff's control, which led to a hearing on the issue. (*Id*.; Sept. 5, 2013 Hr'g Tr., Dkt. No. 116.) When Judge Rosenbluth asked why Plaintiff "couldn't have simply asked [Mr. Darbee or the other inventors] if they remember what their role was and what exactly they did," Plaintiff responded that Darbee was a third-party—even though Darbee was represented by Plaintiff's counsel at his deposition the very next day, and even though Darbee cooperated with Plaintiff in submitting the petition for correction. (Sept. 5, 2013 Hr'g Tr., Dkt. No. 116 at 9:13-16; 12:23-13:3, 13:5-25; 17:2-4.) Judge Rosenbluth characterized Plaintiff's discovery conduct as "playing games" on this point, and determined that Plaintiff's position was "just not credible."

10

(Sept. 5, 2013 Hr'g Tr., Dkt. No. 116 at 34:2-3. 17-25.) Accordingly, the Court ordered Plaintiff to produce more complete responses. (Dkt. No. 115.)

Further, knowing that Plaintiff filed suit on a patent that Plaintiff, at least, believed was invalid for improper inventorship in its *uncorrected* form could have affected how Defendant and the Court approached the '426 Patent. Had the Court known that Plaintiff thought the patent needed to be corrected (even if Plaintiff also believed that correction would be forthcoming from the PTO), the Court might have stayed the case as to the '426 Patent until all PTO issues were resolved, or might have focused the litigation on that issue earlier. Had Defendant known about the correction, Defendant might have approached its defense differently. For example, in the absence of the correction, Defendant prepared a prior art defense that relied on the priority date without Darbee as an inventor. (Brookey Decl., Ex. 2, Dkt. No. 88-1 at 12-69; Mot. 16-17.) After the Defendant discovered the petition, Defendant had to re-file its invalidity contentions after performing additional prior art searching. (Mot. at 17.)

Thus, Plaintiff's litigation conduct concerning the inventorship issue contributes to the finding that this is an exceptional case.

### 2.2.2 Laches

In 2010 and 2012, Defendant sent Plaintiff letters putting Plaintiff on notice that Defendant would assert a laches defense regarding the '426 Patent. (Reply 10 (citing Trial Exs. 1102 and 1104); Miro Decl., Ex. 17, Dkt. No. 447-5 at 248.) Despite this notice, Plaintiff asserted the '426 Patent without providing any justification for its delay. (*Id*.) Such justification was uniquely in Plaintiff's control. Plaintiff's assertion of the '426 Patent despite a lengthy and unexplained lapse in time contributes to finding that this case is exceptional.

**3.    THE '367 PATENT**

Defendant argues that Plaintiff's '367 Patent infringement claim was meritless and should

11

never have been asserted because Plaintiff knew, or should have known, at the outset of the litigation that the asserted means-plus-function claim was invalid. (Mot. 19.) Defendant contends that Plaintiff's assertion of claim 4 of the '367 Patent became especially meritless given the Court's claim construction order on February 1, 2013. (*Id.*; Dkt. No. 60.) And, Defendant asserts that Plaintiff's conduct was even more egregious because Plaintiff brought a motion for reconsideration on the same point which the Court denied (Dkt. Nos. 69, 79). (*Id.*)

Plaintiff responds that in its claim construction briefing, it "identified references in the specification to a 'lighting circuit' as the relevant structure and cited cases in which similar 'circuit' language has been held to be structural." (Opp'n 6; '367 Patent 3:48-52.) Accordingly, Plaintiff argues that "[t]he mere fact that the Court did not find these arguments persuasive does not render them frivolous," and that they "presented non-frivolous arguments that would have preserved the validity of the claims" of the '367 Patent. (*Id.* at 6-7.) Plaintiff does not address the propriety of its motion for reconsideration, which the Court held did not meet either the procedural or substantive grounds for such a motion. (Dkt. No. 79.)

The parties agreed that the asserted language of the '367 Patent is a means-plus-function element governed by 35 U.S.C. § 112(6). (Dkt. No. 60 at 18; Dkt. No. 56 at 7-8.) And, the parties agreed that the recited function is "maintaining said light emitting circuit activated for a short period of time after depression of said light actuation button." The Court acknowledged that the terms "circuit" and "lighting circuit" have been construed to be structural in some instances. But, the Court held that in the context of the '367 Patent, "the structure Plaintiff identifies is merely a recitation of the function" and does not denote an adequate structure, and that the specification did not disclose any structure corresponding to the recited function. (Dkt. No. 60 at 15-18.) Thus, the Court held that the means-plus-function language of claim 4 of the '367 Patent, "circuit means maintaining said light emitting circuit activated for a short period of time after depression of said light actuation button," was invalid for indefiniteness. (*Id.* at 20.)

The Court does not find Plaintiff's claim construction briefing to be exceptional as to the '367 Patent. Plaintiff presented a colorable argument and cited valid case law in support. Although the Court noted that Plaintiff's construction did not answer the question presented

(Dkt. No. 60 at 19), the Court did not hold that Plaintiff's argument was frivolous.

Defendant also argues that it was improper for Plaintiff to petition the Court to reconsider its decision based on the Federal Circuit's ruling in *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348 (Fed. Cir. 2013). (Mot. 19.) It is true that the Court, *sua sponte*, held that Plaintiff's motion for reconsideration lacked merit. (Dkt. No. 79.) An isolated unsuccessful motion for reconsideration would not render a case exceptional, but here, it adds somewhat to the pile.

The Court therefore concludes that Plaintiff's manner of litigating the '367 Patent contributes a very small amount to a finding of exceptionality.

**4.    THE '906 PATENT**

Although the jury found that Plaintiff did not prove infringement of the '906 Patent, losing on that question is not an exceptional event. Plaintiff presented evidence of infringement sufficient to survive summary judgment. (Dkt. No. 222.) At trial, Plaintiff presented evidence that Defendant's manuals taught the patented method and that Defendant promoted the accused feature. (Opp'n 5; May 8, 2014 Trial Tr., Dkt. No. 417 at 56:14-24; May 14, 2014 Trial Tr., Dkt. No. 420 at 8:24-9:3; 95:15-25.) And Plaintiff did present evidence that the accused method was superior to certain non-infringing alternatives. (Trial Tr., Dkt. No. 398-1 at 1291:20-1305:22; May 7, 2014 Trial Tr., Dkt. No. 416 at 86:11-87:11.)

As to the jury's finding of invalidity of the '906 Patent, it is not unusual for a prior art-based invalidity defense to prevail. And the '906 Patent survived Defendant's invalidity attack on summary judgment. (Dkt. No. 222.)

Therefore, the strength of Plaintiff's case and manner of litigating as to the '906 Patent do not contribute to a finding of exceptionality.

## 5. DEFENDANT'S MANNER OF LITIGATING

Plaintiff argues that the conduct of the winning party is relevant to the totality of the circumstances analysis. (Opp'n 16.) "[A] determination of whether a case is 'exceptional' may include the conduct of the winning party – for example, whether the winning party advanced arguments in bad faith or committed litigation misconduct." (*Id*. (quoting *Stragent, LLC v. Intel Corp.*, 2014 WL 6756304, at *4 (E.D. Tex. Aug. 6, 2014).) Plaintiff argues that Defendant: (1) made questionable claim construction arguments, (2) multiplied proceedings by seeking a stay based on groundless *inter partes* review petitions, (3) served excessive requests for admissions, and (4) presented unsound defenses and counterclaims. (*Id*. at 16-17.)

As to claim construction, both parties' claim construction arguments—some successful, some not—were well within the range of reasonable advocacy. And unlike Plaintiff, Defendant did not unsuccessfully move for reconsideration of the claim construction issues it lost. Defendant's motion to stay was likewise typical, and although it was denied, it did not unduly or improperly burden Plaintiff. Defendant's excessive requests for admission were appropriately addressed by Judge Rosenbluth's order holding that Plaintiff needed to admit or deny only six of the requests for admission remaining after the court-ordered meet and confer. (Dkt. Nos. 134, 151.) This was part and parcel of navigating the scope of discovery in this case.

True, the Court has noted that this case was "over-litigated" by both sides. (Dkt. No. 362.) But that consideration will be accounted for in the Court's review—and if Defendant's counsel are wise, in Defendant's submission—of the fees submitted. And while some of Defendant's defenses and counterclaims did not succeed, Plaintiff has not shown that they involved anything like the objective defects found concerning marking of the '067 Patent or inventorship of the '426 Patent that were known in advance to the Plaintiff.

**6.     APPORTIONMENT**

In a recent case, this Court awarded Section 285 fees for only a portion of the case. *Cambrian Sci. Corp. v. Cox Commc'ns, Inc.*, __ F. Supp. 3d. __, No. SACV 11-01011 AG, 2015 WL 178417 (C.D. Cal. Jan. 6, 2015). That approach is likewise appropriate in this case. Here, there very likely would have been a trial on the '906 Patent even had the '426 and '067 Patents never been asserted. And as to the '367 Patent, only the motion for reconsideration contributes to the exceptional case finding.

In *Octane*, the Supreme Court noted "the need in particular circumstances to advance considerations of compensation and deterrence." 134 S. Ct. at 1756 (quoting *Fogerty v. Fantasy*, Inc., 510 U.S. 517, 534, n.19 (1994)). Here, compensation will be adequately served by requiring Plaintiff to pay for the portions of the case attributable to the '426 and '067 Patents, and the motion for reconsideration regarding the '367 Patent. This will also serve as adequate deterrence. Requiring Plaintiff to pay Defendant's fees for portions of the case that were not exceptional has the potential to over-deter meritorious claims, with implications for access to justice. Defendant must therefore apportion its fee request accordingly.

//

//

**DISPOSITION**

The Court GRANTS Defendant's Motion for Attorneys' Fees.

Defendant shall file all it deems necessary to support its fees no later than 14 days of this order. Plaintiff shall file its objections to Defendant's submission no later than 14 days after it is filed. Defendant shall file any response no later than 7 days after the objections. All spreadsheets and other backup Defendant submits to the Court in support of its fee request shall also be lodged with the Court and served on Plaintiff in native form, where feasible. Any deficiencies in Defendant's evidentiary submissions will be grounds to deny the requested relief. The Court will notify the parties if it requires a hearing on the amount of fees.

IT IS SO ORDERED.

DATED: March 10, 2015    _____

Andrew J. Guilford

United States District Judge